James M. Stewart brought this suit to recover of Robert Moore 640 acres of land patented to Soloman Squires on the 30th of August, 1845. Defendant, Moore, answered, claiming 97 acres of land as a pre-emption, which, he says, lies between the Squires survey and the Burkett survey. Plaintiff contends that there is no vacancy between these surveys. The true location of the north line of the Squires survey is the main question in the case. It is a Square survey, calling to be 1,900 yams each way, made in May, 1845. The Burkett survey calls for the north line of the Squires as its south line. It is here that defendant claims there is a vacant strip of land 267 varas wide, running the whole length of the line. The Burkett land was surveyed in June *Page 772 
1847. The Squires land begins at the N.E. corner of survey made for Hopkins for its S.E. corner, from which an elm bears N., 38 W., 8 varas; thence 5., 60 we, 1,900 varas, to the N.W. corner of the said Hopkins survey, (no witness trees;) thence N., 28 W., 1,900 varas, (corner in the prairie;) thence N., 62 E., 1,900 varas to corner, (no bearings;) thence 5., 28 E., at 700 varas pass the N.W. corner of a survey for C. H. Sternes, at 1,900 varas, the beginning. The Burkett survey begins at the N.E. corner of the Squires survey for its S.E. corner, from which it calls for witness trees. An elm, marked "R," bears S., 2 E., 3 varas; and another, marked "C," bears S., 43 W., 5 varas; thence S., 62 W., 1,900 varas to the S.W. corner, from which an elm, marked "M," bears N., 55 W., 55 varas; and another, marked "N," bears N., 74 W., 25 varas; thence N., 28 W., 1,900 varas, to the N.W. corner, from which a gum-elastic, marked "S," bears N., 50 W., 4 varas; thence N., 62 E., 750 varas to a creek, 1,710 varas, to a branch, 1,900 varas, to the N.E. corner, from which a china tree, marked "O," bears S., 58 E., 45 varas, and another, marked "M," bears S., 49 E., 55 varas; thence S., 28 E., 1,765 varas, to the creek, 1,900 varas, to the beginning. The following sketch will show the relative position of contiguous surveys, all running on same courses, on similar lines, as the Squires and Burkett:
[EDITORS' NOTE: FIGURE IS ELECTRONICALLY NON-TRANSFERRABLE.]
George B. Erath made the surveys dated in 1845, and George Green made those of date 1847. The east line of the James, the Hopkins, the Squires, and the Burkett surveys, separating them from Sternes, the Adriance, and the Hogan *Page 773 
surveys, is a continuous line, and identified by marks; and the same is true of the west line of the James, the Hopkins, the Squires, and the Burkett surveys, dividing them from the Gray, the Ferrell, the Fisher, and the Folks surveys. The S.E. corner of Hogan's land is identified; so is the S.E. corner of Sternes', and the S.W. corner of James'. No corners are found at the N.E. and N.W. of the Squires survey, and none are called for. There is an old marked line beginning 135 varas S., 28 E., from the creek, called for on the east line of the Burkett land, and running S., 62 W., across to the east line of the Gray survey. The distances from the N.W. corner of Burkett's survey to the creek, called for in its north line, are found to be correct; and the distance from its N.E. corner on the east line, 1,765 varas, to the creek, is correct; and continuing the east line south of the creek 135 varas, for complement of distance, stumps of elm trees are found, — the same kind called for in Burkett's survey. No bearing trees are found at S.W. corner of the Burkett survey, where the south line intersects Gray's; but 100 varas S., 28 E., the corner of Gray's is found, and its north line, on which the creek is called for, is found at the proper distance. The lines of Ferrell's survey are found, and there is a space of 250 varas between the south line of Ferrell's and the north line of Fisher's; about the same as contended for by defendant between the Squires and the Burkett survey. The Fisher, Folks, Hopkins, Sternes, James, and Mancha surveys were all made at the same time (1845) by Surveyor Erath; and the Adriance, Hogan, Burkett, Ferrell, and the Gray surveys were made by Surveyor George Green in 1847, at the same time. The S.E. corner of the Sternes survey is identified. There are no corners standing on any of the surveys south of Burkett's to Deer creek. The county map of Falls county for 1874 shows no vacancy between the Squires and Burkett surveys. Moore's application for survey under pre-emption law was made June 14, 1879.
There was a trial by jury, and verdict for the plaintiff for the land, and $138.80 rent; and, under defendant's claim for value of improvements in good faith, the value of the improved land was assessed at $1,455, the unimproved land was assessed at $970, and the improvements at $485. Judgment accordingly. Plaintiff entered a remittitur of $100 rent. Defendant appealed. At the request of plaintiff, the court gave the following instruction: "Plaintiffs asked the court to instruct the jury that if the field-notes of the Squires, Burkett, Sternes, Adriance, and other surveys called for said surveys to be contiguous and adjoining each other, forming a block of connecting surveys, then, in such case, the burden of proving that such call is a mistake is upon the defendant in this case to show that call was a mistake; and the mere fact that a slight excess is found in the length of the lines or quantity of land called for in any one or more of said surveys will not be sufficient to establish such mistake. But you may look to all the facts and circumstances in evidence before you, in determining the question as to whether the said surveys do or do not join each other." The giving of this instruction is assigned as error, and the refusal of the court to give instructions asked by defendant was also assigned as error. The charge asked and refused was as follows: "The defendant asks the court to charge the jury that if they believed, from the evidence in this case, that the north line and corners of the Squires survey were never actually run and marked on the ground by the original surveyor, but were called for by estimate or calculation, then and in that event you will fix and determine the said north line and corners of the Squires survey according to the course and distance given in the patent from the south line or corners of the same." The fourth, fifth, and sixth assignments of error are as follows:
"The court should have instructed the jury to find for defendant, because plaintiff had failed to prove title to the entire tract of land in controversy, as claimed in their pleading, but had shown title to only an undivided interest therein. The court erred in rendering judgment for the plaintiffs for the entire *Page 774 
tract of land in controversy, when they proved title to only an undivided interest therein, and claimed in their pleadings title to the whole. The court erred in admitting in evidence the deed from Thos. W. Pierce to Wm. M. Cooke for an undivided interest in the land in controversy, for the reasons set out in defendant's bill of exceptions No. 2, to-wit, because it appeared from the face of said deed that the property attempted to be conveyed was the separate property of his wife, Catherine Cornelia Pierce, nee Cooke, and that said Catherine Cornelia was dead at the time said deed was executed, and and there was no proof that said Pierce was the heir of his said wife." In plaintiff's deraignment of title there was a deed of J. S. Sullivan for the original squires certificate to Catherine N. Cooke, wife of Abner Cooke, both of whom are a admitted to be dead, and deeds to plaintiff from three of the five heirs of said Catherine, — all read in evidence; and deed of Thomas W. Pierce, surviving husband of his deceased wife, Catherine Cornelia, who was an admitted heir of Catherine Cooke, was read, over objection of defendant, there being no evidence as to whether she left heirs or not, or any evidence as to the rights of the surviving husband. The plaintiff only read conveyances to him of three of the Cooke heirs, besides Pierce's deed. The eleventh and twelfth errors assigned are that the verdict of the jury was contrary to and against the evidence, and against the law. The sixteenth assignment is that the court erred in admitting, over defendant's objection, the Burkett field-notes. No other errors are noticed in appellant's brief, and are presumed to be abandoned.
The charge of the court complained of in the first assignment of error is, in our opinion, correct, under the facts. of the case. The burden was upon the party claiming the vacancy between the surveys calling for each other to show it. The east and west lines of the tier of sections, from and including the James to the Burkett, were marked, and the lines were continuous to the north boundary of the Burkett. The Squires was constructed on the north line of the Hopkins, and the Burkett, made two years afterwards, was constructed on the north line of the Squires. There was evidently no intention to leave any vacancy between the Squires and the Burkett. Green, the surveyor who made the Burkett survey, declared that the Burkett commenced at the north-east corder of the Squires, and, running the course and distance called for in the Squires north line, called for its north-west corner, and by comparison of the calls for creeks it is seen that he was accurate as to distances between creeks and lines. There is, an old line where the plaintiff claimed the Squires north line to be, accepted by the defendant as the south line of the Burkett, and supposed to have been run by Green in making the original survey of the Burkett. This act and declaration that this was the north boundary line of the Squires should be allowed to stand until the contrary is made to appear. It is the best and most satisfactory evidence of the locality of the line to be found in the record. The fact that there was an excess in the distance from the north to the south lines of the Squires is explained by the fact that about the same ratio of error is found from the south-west corner of the James to Deer creek, and thence on to the Burkett south line, and the further fact that there is an excess of 150 to 180 varas from the established east and west lines of all these sections from the James to the Burkett, inclusive. We consider the language of Associate Justice STAYTON, in the case of Freeman v.Mahoney, not only applicable to this case, but a sound exposition of the law of all such cases. He says: "When we take into consideration the fact that all these surveys were made many years ago, and that the surveyors who made them in all probability saw the country when the natural objects called for in the Chambers grant still existed, we are not authorized to believe that they made statements, under their official oaths, which they did not know to be true, upon proof of the simple *Page 775 
fact that, to make the upper line of the Chambers grant where it was so declared to be, the grant would be to a trifling extent wider than stated in the field-notes. It rested with the plaintiff to show that the call for the northern line of the Chambers as the southern boundary of the Rice was a mistake. He who at this date, when lands have become valuable, and those who originally surveyed them have passed away, makes a location between grants which surveyors who originally surveyed them, more than 30 years ago, under their official oaths declared to be contiguous, should come prepared with evidence which will clearly show that such declarations were made in mistake, and such testimony must consist of something more than that one or both the grants will be slightly in excess of the area called for."57 Tex. 626. At the north-west corner of the Squires, Erath called for prairie, and at the same corner Green called for one elm 55 varas off, and another 25 varas off. At the north-east corner of the Squires, Erath called for no bearings; while Green designated the same corner by one elm 2 varas off, and one 43 varas off; and this, it is contended, shows that Green, in making the Burkett survey, was not at the corners of the Squires. It is true that some weight should be given to this circumstance, but it would not be conclusive. The jury might still correctly find that the corners were identical. They might find that, where the bearing trees are 55 and 25 varas from the corner, the surveyor would be justified in calling for prairie; and the fact that no bearing trees were called for at the other corner would not preclude them from finding that the corners called for by the two surveyors were identical. The corners called for in the Burkett were not found. There was an old marked line found there, and at one of the corners the stumps of trees of the same kind called for in the Burkett were found. Thus we see that there is but little proof upon which to base the conclusion that the line there found is not the common line between the two surveys, and but little evidence to overcome the declaration of Green that the line was a common line. We find that there is not sufficient testimony to justify the supposition that there was error in the charge of the court that the burden of proof was upon the defendant to show that there was a vacancy between the two surveys. He was correct in telling the jury that the burden was on defendant to show there was a vacancy. After the rule in such cases was correctly stated, the court instructed the jury to look to all the facts, to determine the question of vacancy between the two surveys. We think the whole charge as given was correct.
We cannot say there was error in the refusal of the court to give the instruction asked by the defendant. If the south line of the Squires had been known and certainly identified, and had there been no lateral lines or other means of identifying the Squires except by the south line, then course and distance from the south line would have been the next most certain method of fixing the north boundary. The south line of the Squires was not fixed on the ground by marked corners or lines; and, if the line called the "North Line" of the Burkett was not the north line, then the lateral lines might have been resorted to, to fix the locality of the Squires. The east and west lines were marked, and found on the ground, on all these surveys, from the James south line north. The rules in the charge asked were not the next best mode of establishing the Squires. It would extend from the south line, wherever it was, along north between its lateral lines as far as they extended, — to the Burkett, if necessary; or it might be established by the side lines, or even one of them. The south line was not necessarily the base line to construct the survey upon when the other line could be found on the east and west, and the south line not definitely fixed. The fourth, fifth, and sixth assignments of error are not well taken.
It has been so often decided by our supreme court that one tenant in common can recover in trespass to try title against a mere trespassor, a wrongdoer, and a stranger, that it needs no discussion; and this has been held after, *Page 776 
as well as before, the adoption of the Revised Statutes. Pilcher v. Kirk,55 Tex. 209; Croft v. Rains, 10 Tex. 520;Guilford v. Love, 49 Tex. 715; Sowers v. Peterson, 59 Tex. 216;Ney v. Mumme, 66 Tex. 268. When the plaintiff shows title from the government to an undivided interest in the land in suit, he can recover the whole survey from one who does not connect himself with the title. The defendant could not acquire any rights as against the true owners by an attempt to pre-empt land that had already been patented by the state. The plaintiff deraigned title from the sovereignty of the soil to at least three-fifths undivided interest in the land in suit, and had the right to maintain the suit against the defendant, who was a stranger to the title, and a trespasser. Pilcher v. Kirk,55 Tex. 209.
There was no error of the court in admitting the field-notes of the Burkett survey. There could have been no intelligent disposition of the case without the Burkett field-notes. It could not be known whether there was a vacancy between the Squires and the Burkett without the field-notes of the latter survey. The defendant could not complain that these field-notes were admitted. He claimed the land supposed to have been unappropriated between the two surveys, and they were admissible upon the issue he made in the case. But they were properly admitted upon the case made by the plaintiff; he having the right, as before explained, to show by them the recognition of the north line of the Squires by the call in the Burkett for that line. Suppose these field-notes had not been offered, there would then have been no room to doubt that the old marked line found upon the ground was the north boundary of the Squires. The defendant was in no position to object to their admissibility. The eleventh and twelfth assignments of error cannot be sustained.
The instructions of the court submitted the issues fairly to the jury, and the evidence fully supported the verdict. There was no error-in the judgment, and it should be affirmed.
WILLIE, C.J. Report of the commission of appeals examined, their opinion adopted, and the judgment affirmed.
 *Page 625