### LAFFERTY v. STEVENSON.

(Court of Civil Appeals of Texas. Jan. 31, 1911. Rehearing Denied Feb. 23, 1911.)

1. BOUNDARIES (§ 3*)—SURVEYS—CONFLICTING ELEMENTS.

The true location of a survey or any line or corner thereof should be determined by finding the lines and corners actually made on the ground by the surveyor, and if the calls in the field notes are inconsistent so as to make the location of the true line uncertain, those calls should be adopted which are most consistent with the surveyor's intention as shown by the field notes, and the surrounding circumstances.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

2. BOUNDARIES (§ 3*)—CONFLICTING ELEMENTS.

Where the surveyors who located surveys Nos. 13, 6, and 7, believed, in locating such surveys, that the N. W. corner of the H. survey with reference to which they were located was 256 varas west from where it was in fact, at a point due north from the recognized N. E. corner of survey No. 13, the call for course and distance from the undisputed lower S. E. corner of survey No. 6 and N. E. corner of No. 13, instead of the mistaken call for the N. W. corner of the H. survey, should be adopted; the fact that such latter corner was well identified not making the call for it controlling, irrespective of the mistake in its location.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

3. APPEAL AND ERROR (§ 1033*)—HARMLESS ERROR—ERROR FAVORABLE TO COMPLAINING PARTY.

Plaintiff in trespass to try title cannot complain on appeal of a charge which removed from the jury's consideration, evidence on the issue of improvements made in good faith by

defendant, on the ground that the question of improvements was not in issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4056–4058; Dec. Dig. § 1033.*]

4. TRESPASS TO TRY TITLE (§ 38*)—ACTIONS—BURDEN OF PROOF—ESTABLISHING BOUNDARIES.

Plaintiff in trespass to try title has the burden of establishing the true location of the lines of the survey claimed.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

5. LIMITATION OF ACTIONS (§ 195*)—BURDEN OF PROOF.

A defendant asserting limitations in trespass to try title, has the burden of sustaining the defense.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 711–716; Dec. Dig. § 195.*]

6. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Where in trespass to try title to recover survey No. 7, in which plaintiff's title to the survey was admitted and defendant claimed solely by limitation, two other surveys embraced within such survey under two registered deeds to both of such other surveys, any error in admitting in evidence certain affidavits in connection with pre-emption claims to such other two surveys claimed by defendant was harmless to plaintiff.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160; Dec. Dig. § 1050.*]

7. ADVERSE POSSESSION (§ 85*)—COLOR OF TITLE—EVIDENCE.

If in trespass to try title defendant claimed a part of a tract by limitation, under pre-emption claims, affidavits showing such claims were admissible in evidence.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 501; · Dec. Dig. § 85.*]

Appeal from District Court, Newton County; C. B. Martin, Special Judge.

Action by J. E. Lafferty against Alvin Stevenson. From a judgment in part for plaintiff, he appeals. Affirmed.

John Hamman, C. C. Wightman, and B. F. Louis, for appellant. Greer & Minor, for appellee.

REESE, J. This is an action in trespass to try title by J. E. Lafferty against Alvin Stevenson to recover a tract of land described as "survey No. 7, block 3, H. T. & B. Ry. Co., in Newton county." Defendant disclaimed as to all of the land not embraced in the Alexander and Mahaffey surveys of 160 acres each, as to which he claimed title generally and by limitation of 3, 5, and 10 years. He also claimed the value of improvements alleged to have been made in good faith, but ·there was no issue as to this. A trial with a jury resulted in a verdict and judgment for plaintiff for all of the land claimed by him except that portion in conflict with the Alexander and Mahaffey surveys, as to which there was judgment for defendant. From the judgment, plaintiff appeals.

There is no question made of appellant's title to the land embraced in survey No. 7, and his right to recover the same, except in so far as it may be defeated by appellee's defense of limitation, and the decision of this question turns entirely upon the true location of the west line of survey No. 7. Whether this line be located as claimed by appellant or appellee survey No. 7 conflicts with both the Alexander and Mahaffey surveys, upon which were located appellee's improvements, but if located as claimed by appellant no part of such improvements were on that portion in conflict and the defense of limitation fails, while if located as claimed by appellee the improvements and actual possession of appellee covered a part of survey No. 7 in conflict, and entitled appellee to recover under his limitation plea all of the Alexander and Mahaffey surveys embraced in the conflict. The following sketch will serve to illustrate the question in dispute:

Note: The dotted line, AA, running across the Alexander and Mahaffey surveys, is the west line of· survey No. 7 as claimed by appellee. The dotted line, BB, just east of this line is the west line of No. 7 as claimed by appellant.

Section No. 13, H. T. & B. Ry. Co., was surveyed by Burnham April 20, 1873, according to the following field notes: "Beginning on the E. Hardin W. line 350 varas north of its S. W. corner a stake from which a pine bears S. 4.2 varas and a pine bears E. 11 varas. Thence S. at 350 varas the S. W. corner of the E. Hardin at 1,900.8 varas a stake from which a pine bears N. 52 deg. W. 27 varas, and a pine bears S. 10 deg. E. 8 varas. Thence W. at 1,900.8 varas a stake from which a pine bears S. 19 deg. 30′ E. 5 varas and a pine bears N. 85 deg. W. 4.5 varas. Thence N. at 1,900.8 varas a stake from which a pine bears N. 40 deg. E. 3.5 varas and a sweet gum· bears S. 13 deg. E. 14 varas. Thence E. at 1,900.8 varas the place of beginning, bearings marked 'X' surveyed April the 20, 1873."

Survey No. 6 was surveyed after No. 13 and prior to survey No. 7, which latter survey was made in. 1876, but the copy of the field notes in the record does not show the date of the survey nor by whom made. Its field notes are as follows: "Beginning at a stake the S. E. cor. of No. 5 on the N. line of No. 13, H. T. & B. R. R. from which a post oak mkd. ——— bears S. 88 deg. E. 20 vrs. and a S. gum 63 deg. E. 7.3 vrs. same mark. Thence E. at 1,171 vrs. stake the N. E. cor. of No. 13 from which a pine brs. S. 4.3 vrs. and a pine E. 11 vrs. Thence N. at 1,094 vrs. with Ennis Hardin's W. line to his N. W. cor. from which a pine mkd. E. H. brs. S. 6 deg. E. 6.7 vrs. and another, same mark, N. 65 deg. W. 5.3 vrs. Thence E. at 514 vrs. stake on Hardin's N. line. Thence N. at 1,360 vrs. Isaac Garner's south line. Thence W. with his S. line at 1,607 his S. W. cor. from which a pine mkd. E. G. brs. N. 34 deg. E. 4.8 varas and a B. gum, same mark, brs. N. 34 deg. W. 5.2 vrs. Thence N. at 598 vrs. a stake on his W. line from which a holly brs. S. 32 deg. E. 5.4 vrs. and another brs. N. 13½ W. 16 vrs. Thence west at 81 vrs. the N. E. cor. of No. 5. Thence S. at 3,050 vrs. the beginning."

Survey No. 7 was made by C. A. Nations June 12, 1876, according to the following field notes: "Beginning at a stake on the E. & S. cor. of No. 6 in the line of Ennis Hardin's survey. Thence east with Hardin's line through Pine Woods at 1,329 vrs. a stake in said line. Thence north at 1,360 vrs. stake in Isaac Garner's S. line. Thence west through Dry Pine Woods with said line at 1,329 vrs. a cor. of No. 6. Thence south with the E. line of No. 6. 1,360 vrs. to the place of beginning."

The Ennis Hardin was surveyed June 1, 1838. Its N. W. corner is marked in the field notes as follows: "A stake from which a pine marked E. H. bears S. 8 E. 6.7 varas and a pine marked E. H. bears N. 65 W. 53 varas." This is the N. W. corner of the survey. The S. W. corner is also marked by two bearing trees.

We may say now that the true location of the west line and northwest corner of the Hardin is established beyond dispute by the evidence, and if the L corner of survey No. 6, as called for in the field notes, be established at this point, and its upper southeast corner, and the southwest corner of survey No. 7 be established as called for 514 varas east of this point, then appellant's contention as to the true location of the west line of No. 7 is established. But it is appellee's contention that the lower southeast corner of survey No. 6 was established at the northeast corner of survey No. 13, a well established and recognized corner, which is located and identified on the ground 263 varas west of the west line of the Hardin as now shown and recognized on the ground, and that the next call of survey No. 6 to run from this corner of 13 north 1,094 varas with Ennis Hardin's west line to

his northwest corner is incorrect in calling for the line and corner of the Hardin. His explanation is that at the time surveys 13, 6, and 7 were located it was supposed by the surveyors that the northwest corner of the Hardin was located some 256 varas west of its true location as now recognized, and that it was by this supposed location of the west line and to this supposed location of the northwest corner that the surveyor ran in running and establishing the corners of survey No. 6. If this contention be true then the west line of survey 7 must be established as contended for by appellee, which would make good his plea of title by limitation. Much evidence was introduced on this point, and it is sufficient to support the conclusion at which the jury evidently arrived, that in running the lines of No. 6 north from the northeast corner of No. 13, the survey ran north by what he supposed at the time was the Hardin west line and to what he supposed was Hardin northwest corner, but that in this he was mistaken and in fact ran a line and established a corner 256 varas west of the true location of the Hardin west line and northwest corner, and that the southeast or beginning corner of No. 7 was established in the same way 514 varas east of the supposed northwest corner of the Hardin. There is no dispute that the northeast corner of survey No. 13 as placed on the ground by the original survey, and as found and recognized now, instead if being on the Hardin west line is, in fact, about 263 varas west of it. This fact is shown by the undisputed evidence.

The evidence is sufficient to authorize the following conclusions of fact, which we make:

(1) The northeast corner of survey No. 13 as originally surveyed is not, as called for in the field notes, in the Hardin west line, but at a point about 263 varas east of such line, and is a well marked and recognized corner, as to the location of which there is no dispute.

(2) Survey No. 6 was located by running from this northeast corner of 13 N. 1,094 varas to a point called for in the field notes as the northwest corner of the Ennis Hardin, but in fact 256 varas west of the true northwest corner of the Hardin. The call in the field notes of No. 6 for a line to run from the northeast corner of No. 13 with the west line of the Hardin to its northwest corner is a mistake and must yield to the call for a line N. 1,094 varas. The upper southeast corner of No. 6 was located 514 varas east from its L corner thus established, and not that distance from the true corner of the Hardin as now recognized.

(3) The west line of No. 7 was located by beginning at the upper southeast corner of No. 6 as thus established, and running thence north to the south line of the Garner.

(4) The west line and the northwest cor-

ner of the Hardin as originally surveyed are in fact 256 varas (about) east of where they were supposed to be by the surveyors locating Nos. 13, 6, and 7, and the calls in the field notes of these surveys for this line and corner are a mistake.

(5) The northeast corner of No. 13 and the lower southwest corner of No. 6 are marked and designated on the ground, and its location is as well defined and recognized as the northwest corner of the Hardin.

(6) In call for the northwest corner of the Hardin in the field notes of survey No. 6 the same bearing trees are called for as in the field notes of the Hardin, which bearing trees—or the remains thereof—are found on the ground to mark this northwest corner at a point 256 varas east of the L corner of No. 6 as located by the surveyor.

(7) To connect the lower southeast corner of survey No. 6, which is the northeast corner of survey No. 13, with the true northwest corner of the Hardin it would be necessary to run a line northeast to said corner, disregarding the call to run with the west line of the Hardin and the call both for course and distance of this line as called for in the field notes of No. 6.

(8) Located as stated, the west line of No. 7 cuts off part of the land claimed by appellee on the Alexander and Mahaffey surveys within appellee's actual inclosure and of which he had been in actual peaceable and adverse possession under recorded deeds, with payment of taxes, etc., for more than 10 years before the filing of this suit, with all of the elements of such adverse possession necessary to complete his title by limitation to all of the Mahaffey and Alexander surveys claimed to be in conflict with survey No. 7.

There is no error in those portions of the court's charge referred to in the first and second assignments of error. The court in these paragraphs of the charge clearly stated to the jury that the true location of any survey, or any line or corner thereof, is determined by where the surveyor placed and marked it and that it was the duty of the jury to follow the footsteps of the surveyor and find the lines and corners which he actually made on the ground. The jury was further instructed that if there was an inconsistency or conflict in the calls in the field notes, and that some calls create uncertainty or confusion as to the true line, it was their duty to adopt the call or calls which they might believe to be most consistent with the intention of the surveyor as evidenced by the field notes and ascertainable from the surrounding circumstances; that is, to reject the inconsistent and be governed by the true calls in the field notes as they might find them to be from evidence of lines and corners marked on the ground. Throughout the charge the duty of the jury to follow the footsteps of the surveyor and locate the lines and corners where he located them,

if it can be done, is made its most prominent feature, and it was impossible for the jury to understand that they were at liberty to find the lines and corners where the surveyor intended to place them, unless they found from all the evidence that he actually placed them there. The charge was peculiarly applicable to the case made by the evidence, which showed an irreconcilable conflict in some of the calls from which it was the duty of the jury to adopt those which the evidence showed to be true and reject those which were false. In no other way could they follow the footsteps of the original surveyor. We take this to be settled law in this state for which no citation of authority is necessary.

Appellant also objects by his third and fourth assignments of error to that portion of the court's charge by which the jury were instructed, referring to the relative dignity of the calls for natural objects, artificial objects and course and distance; that neither absolutely controls another call where such call more truly indicates, from the evidence, the true location of the land in controversy, and that a call for course and distance, while ordinarily inferior and yielding to a call for an artificial object, if in conflict therewith, may nevertheless be adopted by the jury as controlling the true location, if the jury believe from the evidence that such call for course and distance is more truly consistent with the intention of the parties, apparent on the face of the field notes, and that the call for a natural or artificial object was inserted by mistake and was false.

The court in another part of the charge immediately preceding that quoted above instructed the jury that calls were entitled to preference in the order of (1) calls for natural objects, (2) for artificial objects, and (3) for course and distance.

The real pivotal issue presented by the evidence was whether the surveyor in locating No. 6 ran due north 1,094 varas from the northeast corner of survey No. 13, to a point supposed by him to be the northwest corner of the Hardin, but which corner was in fact located 256 varas east of such point, or whether from this northeast corner of No. 13 he ran diagonally in a northeast course to the true northwest corner of the Hardin as now recognized and established. It is not contended, or at least no such theory is presented by the evidence, that the northeast corner of No. 13, which is the lower southeast corner of No. 6, as established by the original survey of those tracts is in the west line of the Hardin as called for, for all of the witnesses, including the surveyors called by appellant, adopt this corner, as unmistakably shown and recognized on the ground, as being located about 263 varas west of the Hardin west line. Then the call in the field notes of No. 6 to run with the west line of the Hardin is an impossible call and clearly a mistake.

But the conflict in the calls is attempted to be reconciled by running straight in a northeast course from the lower southeast corner of No. 6 and the northeast corner of No. 13 to the true northwest corner of the Hardin. Such a line would reach the northwest corner of the Hardin called for, but would disregard the course and distance called for and the call to run, with the west line of the Hardin.

There was evidence introduced which, if true, showed that in fact the surveyors who located surveys Nos. 13, 6, and 7, at the time such surveys were made, were under the belief that the northwest corner of the Hardin was 256 varas west from where it is now found to be, in fact at a point due north from the recognized northeast corner of No. 13, and that these surveys were located under this belief. The evidence on this point was sufficient to support the conclusion that these surveyors acted under this mistaken idea as to the location of the line and corner of the Hardin, in running out all of the surveys 13, 6, and 7. This created a conflict in the calls, and if in endeavoring to find the true lines from all the evidence it was concluded that the calls for the northwest corner and west line of the Hardin was a mistake, it was clearly the duty of the jury to adopt the call for course and distance from the undisputed lower southeast corner of No. 6 and northeast corner of 13, instead of the call for the northwest corner of the Hardin. Those portions of the charge objected to correctly stated the law as applicable to the case presented by the evidence.

Appellant's contention seems to be that the call for the northwest corner of the Hardin, well marked and identified, must absolutely control without regard to the evidence tending to show a mistake in this call. We do not understand this to be the law. Linney v. Wood, 66 Tex. 29, 17 S. W. 244; Jones v. Burgett, 46 Tex. 284; Titterington v. Trees, 78 Tex. 569, 14 S. W. 692; Boon v. Hunter, 62 Tex. 588; Hubert v. Bartlett, 9 Tex. 104; Jones v. Powers, 65 Tex. 215; Booth v. Upshur, 26 Tex. 70.

What we have said disposes also of the fifth assignment of error which is overruled.

Appellee claimed the value of improvements made in good faith, and to sustain this claim introduced evidence of an agreement between himself and one Schafer, alleged to have been the agent of the then owner of survey No. 7, on the faith of which he claimed to have placed the improvements. The court in effect charged the jury that this evidence was admitted only on the issue of improvements in good faith, but that as appellant did not claim any of the land on which the improvements were located that issue was not before them. The effect of this charge was to withdraw the evidence from the consideration of the jury for any

purpose. There is nothing in this of which appellant can complain. No complaint is made in the brief of the admission of the evidence.

There was no error in charging the jury that appellant had the burden of establishing the true location of the lines of survey No. 7, adding in connection therewith that the burden was upon appellee to sustain his defense of limitation. The seventh assignment of error presenting this point is overruled.

What we have said is sufficient answer to the eighth and ninth assignments in which appellant complains of the refusal of the court to give two charges asked by him, both of which were peremptory instructions to find for appellant.

We think that it was unnecessary to charge the jury in this case as to the presumption that a survey was actually made on the ground, and it is not reversible error that the court refused to give such a charge as is complained of in the tenth assignment.

Whatever error, if any, there may have been in admitting in evidence the affidavits in connection with the pre-emption claims to the Alexander and Mahaffey surveys was immaterial and harmless. The title of appellant to survey No. 7 is admitted, and appellee relies solely on his limitation title. He had duly registered deeds to both the Mahaffey and Alexander surveys, as a basis of his limitation title, and the validity of the affidavits referred to was a matter of no moment. They did not affect the real issue. However, if the case had turned on the title of appellee under these pre-emption claims we think it was not error to have admitted them in evidence in this suit.

The fifteenth assignment is that the verdict and judgment are contrary to and not supported by the evidence. What we have already said is sufficient to show that this contention cannot be sustained.

We find no error in the record, and the judgment is affirmed.

Affirmed.