POLK v. REINHARD. (No. 5797.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 28, 1917. On Motion for Rehearing, April 4, 1917.)

1. BOUNDARIES ⟊10—INCONSISTENCY OF SURVEYS.

Where field notes of one survey are complete and contain no inconsistent calls, it is not permissible to look to field notes of another survey to create an inconsistency.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 90, 91.]

2. BOUNDARIES ⟊3(3) — CONFLICTING ELEMENTS—CALLS CONTROLLED BY MARKS.

A corner actually located and marked will control the call for another corner or line mistakenly assumed to be in the same place.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 6–19.]

3. BOUNDARIES ⟊11 — CONFLICTING ELEMENTS — FIELD NOTES CONTROLLING LAND CERTIFICATE.

The fact that land office certificate stipulated that two surveys should connect with

each other will not affect the actual location as shown by field notes, which do not connect owing to a mistake in surveying; and, where each survey contains the number of acres called for, a later patent to land located between the surveys passed title.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 92–94.]

On Motion for Rehearing.

4. BOUNDARIES ⊙—3(3) — CONFLICTING ELEMENTS—MARKED CORNERS—FIELD NOTES.

Where field notes call for the line of a certain survey, but also call for a marked bearing tree, the marked corner and distance control the call for the line of the older survey.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 6–19.]

Appeal from District Court, Medina County; R. H. Burney, Judge.

Suit to recover land by Fred Reinhard against Dan Polk. Judgment for plaintiff, and defendant appeals. Affirmed. On motion for rehearing. Motion overruled, and former opinion sustained.

George Powell, of San Antonio, for appellant. De Montel & Fly, of Hondo, and Jno. W. Hill, of Uvalde, for appellee.

MOURSUND, J. On December 20, 1877, a certificate was issued by the Commissioner of the General Land Office to Corpus Christi, San Diego & Rio Grande Narrow Gauge Railroad Company entitling it to 640 acres of land to be located upon any of the vacant and unappropriated public domain, which certificate provided that for each certificate granted the company a like number of acres to be surveyed for the use of the state, and that no location should be made unless at least two surveys connected with each other could be obtained.

On September 1, 1879, Louis H. Bohme, deputy surveyor of Medina county, surveyed for Ross Kennedy, assignee of said company, by virtue of said certificate, survey No. 399 in Medina county, and located and surveyed for the state the alternate survey No. 400; the field notes of each calling for 640 acres of land. The two surveys were delineated on the sketch accompanying his field notes as follows:

By reason of the irregular shape of No. 399, in order to include 640 acres therein, his north line had to be 2052.8 varas, and that distance was called for in the field notes. The northwest corner of said survey No. 399, the beginning corner, is well established, and is the southeast corner of survey No. 905, the northeast corner of survey No. 477, and the southwest corner of survey No. 1005. He established the northeast corner of No. 399 on the ground, and identified same by bearing trees as follows: "L. O. 14 in. dia. brs. N. 40 E. 15.7 vrs. do 6 in. dia. brs. S. 64 W. 28 vrs." He also established on the ground the southeast corner of survey 399. In his field notes of survey No. 400, he called for the southeast corner of No. 399 as the beginning corner; thence north with the east line of No. 399 to its northeast corner calling for its bearing trees; thence east with the south line of survey 1005, 900 varas, to a stake 6 varas due north of northwest corner of survey No. 1002, 1,260 varas, to southwest corner of said survey; thence east in part with south line of survey 1002, 2,543 varas; thence south 720 varas; thence west, 3,443 varas, to beginning. On May 18, 1882, the same surveyor made corrected field notes of the two surveys, which it is evident were deemed necessary because it was discovered that the north line of No. 400 running east from its beginning corner could be extended, but that survey 1002 was much further south than it was thought to be when he first located surveys Nos. 399 and 400, and that a considerable portion of the land included by him in survey 400 was in fact covered by prior locations. He found that there was not sufficient public domain *to give each survey 640 acres, and undertook to reduce the surveys to 548 acres each by making a new dividing line further west. He called for the same beginning corner for survey No. 399; "thence east with the south line of survey 1005, 1,792 vrs., to a stake and mound; thence south 1,980 vrs., to a stake and mound; thence west 1,792 vrs., etc." He called for survey 400 to begin at a "stake and mound, the N. E. corner of Sur. 399 of 548 acres; thence east in part with S. line of No. 1005, at 261 varas at stake and mound for point from which a L. O. 14" dia. brs. N. 40 E. 15.1 vrs. do 6" dia. brs. S. 64 W. 28 vrs., at 878 vrs. the S. E. corner of Sur. No. 1005 and S. W. corner of No. 83, 1,348 vrs. to S. E. corner of No. 83 on W. line of No. 1002½; thence south with W. lines of surveys 1002½, and 1002, 175 vrs. to S. W. cor. of No. 1002." The other calls need not be given, except to state that the southwest corner corresponded with the southeast corner of the corrected survey No. 399.

The distance of 2,052.8 varas given for the north line of No. 399 in the first field notes was erroneous, and said distance in fact was 2,202 varas. Now, when Bohme made his corrected field notes, he failed to discover such error, and therefore underestimated the vacant land to the extent of 45

acres. It is most probable that in order to avoid remeasuring the north line of No. 399 he constructed said survey by simply figuring what distance he would have to run east from his beginning corner in order to obtain half of the area he thought was vacant, and thus arrived at the distance of 1,792 varas. His call for stake and mound, without bearing trees, as marking the new corner of No. 399, indicates that he did not again measure the north line, and in fact that he never actually located such corner on the ground. Had he located it on the ground, it is reasonable that he would have marked it as he did the dividing corners between the surveys as first constructed. Having failed to measure his north line over, he did not discover the error in his first measurement and did not know there were 45 acres more in the vacancy than called for in his two corrected surveys. Survey No. 399 was patented upon the corrected field notes thus made by Bohme.

On April 14, 1886, J. H. Brauer, county surveyor of Medina county, again made field notes for survey No. 400, after making a resurvey thereof, in which he called to begin at "a stake, the N. E. corner of Sur. 399 for N. W. corner of this survey a L. O. 10" dia. mkd. X bears N. 70½ W. 42 vrs.; thence east at 261 vrs. a stake for point on this line, a L. O. 14" dia. brs. N. 40° E. 15.1 vrs. and a L. O. 6" dia. brs. S. 64 W. 28 vrs. 1,368 vrs. to a rock mound on W. line of No. 1002½ and distant 1,499 vrs. from the N. W. corner of said survey." The other calls are unimportant, and we will only say that the courses and distances brought him to a point 1,708 varas south of his beginning point, and he then called to run north with the east line of No. 399 to his beginning place. These field notes give survey No. 400 only 432.6 acres, and upon them said land was sold and patented. It is apparent that when Brauer made this resurvey he did not measure the north lines of surveys 399 and 400, but went to the live oak bearing trees marking the northeast corner of 399 as first surveyed, and, assuming that Bohme's measurement was correct, measured west 261 varas for the purpose of reaching the northeast corner of No. 399 according to Bohme's corrected field notes, and there established on the ground his northwest corner of No. 400, marking a tree to identify the place. This is shown by Brauer's letter of November 6, 1886, wherein he states that he found and identified the northwest corner of survey No. 1002½, the northeast corner and northwest corner survey No. 1, and the point 261 varas east of the northwest corner of survey No. 400, and that he made the survey from these points. Thus it came about that there was a space of 149 varas between his northwest corner of No. 400 and the northeast corner of No. 399 if the same be located by running course and distance from its beginning corner which space was not shown on any map.

193 S.W.—44

Between 1886 and 1890, Louis Polk, representing appellant, who owned survey No. 400, and another surveyor, representing the owner of No. 399, ran the north line of No. 399, and found no stake or mound at the point 1,792 varas east of its northwest corner. After such survey, a fence was erected upon the east line of No. 399 as thus fixed, and Kennedy, the owner of No. 399, by boundary line agreement with Dan Polk, the owner of No. 400, conveyed to said Polk all that part of No. 399 lying east of said fence. Kennedy stated that he only claimed what his patent called for and was willing for Polk to have the rest because Polk was 116 varas short on the land he had purchased from Ney, meaning survey No. 400.

On June 29, 1915, a patent was issued to Fred Reinhard for survey No. 399¾, of 45 acres, the field notes of which are as follows:

"Beginning at a stake set for N. W. corner of survey No. 400, from which a live oak, 10" in dia. mkd. X brs. N. 70.1 W. 42 vrs. for N. E. corner of this survey; thence S. with west boundary line of survey No. 400, 1,708 vrs. to stake for S. W. corner of survey No. 400, for S. E. corner of this survey; thence west with north boundary line of survey No. 1, 149 vrs. to a stake on the E. boundary line of survey No. 399, for S. W. corner of this survey. Thence N. with east boundary line of survey No. 399, 1,708 vrs. to a stake the N. E. corner of survey No. 399 from which a live oak 12" in dia. brs. S. 37½ E. 28 vrs. for N. W. corner of this survey; thence east 149 vrs. with south boundary line of survey No. 1005, J. N. Berryman to the place of beginning."

Reinhard then brought this suit for the land described in his patent against Dan Polk, who answered by plea of not guilty, and other pleas unnecessary to mention as no assignments of error relate thereto. A jury was waived, and the court found that the strip of land sued for was at the time it was patented to plaintiff a vacancy between surveys Nos. 399 and 400, and that the patent vested in plaintiff the title to said land. Judgment having been entered in favor of plaintiff for the land sued for, defendant appealed.

If Bohme in fact made no actual survey when he fixed the northeast corner of No. 399 at a point of 1,792 varas east from its beginning corner, there can be no doubt that the survey could not be extended further east than the distance called for. But if the presumption be indulged that he ran out the survey, and actually indicated the location of the northeast corner by a stake and mound, then there is no evidence that any person ever found such stake and mound, and the call for distance must govern. If it had been proved that Bohme actually drove a stake and made a mound for the northeast corner of No. 399 at a point 149 varas further east than the distance called for in the field notes, the location of the stake and mound would control. This proof, of course, would be difficult to make unless some one who saw the survey made or assisted in making it was called as a witness, for stakes and mounds

are frequently placed by other surveyors than the one who made the survey. Louis Rothe, one of the men whose name appears as a chain carrier upon the corrected field notes, testified that he did not assist in surveying any lines of survey No. 399 until 1905; that the only chain carrying he did for Bohme in 1882 was with regard to survey No. 83, a small survey, which does not touch No. 399, but does adjoin the eastern part of the north line of No. 400. This testimony indicates that Bohme, upon discovering that he was mistaken at the time he first surveyed Nos. 399 and 400 as to the lines of older surveys north and east of No. 400, reconstructed surveys 399 and 400 in 1882 without running the lines thereof. Brauer, in his letter, names the corners found and identified by him, and does not say that he found anything at the point 261 varas west from the marked corner of No. 399 made by Bohme in 1879. There is no evidence from which the court could find that Bohme in fact drove a stake and made a mound to mark the northeast corner of No. 399 when he corrected the field notes of such survey in 1882.

[1] The only question to determine, therefore, is how to locate survey No. 399 from the field notes. The field notes of said survey are complete in themselves, and do not contain any inconsistent calls. It is not permissible to look to the field notes of another survey in order to create an inconsistency in the calls of said survey No. 399. Thompson v. Langdon, 87 Tex. 259, 28 S. W. 931; Williams v. McLeroy, 135 S. W. 251; Upshur County v. Lewright, 101 S. W. 1013; Keystone Mills Co. v. Peach River Lumber Co., 96 S. W. 64. To locate survey No. 399, therefore, we must run east 1,792 varas from the beginning corner; thence south, etc. This places the northeast corner at the point 149 varas west of the corner marked by Brauer for the northwest corner of No. 400, and the southeast corner of 399 149 varas west of the southwest corner of No. 400, as established by Brauer.

[2] There can be no doubt that survey 400 cannot be extended westward so as to take in such strip of 149 varas. Its west line is controlled, not by the call for survey No. 399, but by the call for a certain point from which a "L. O. 10" dia. mkd. X brs. N. 70½ W. 42 varas." That a corner actually located and marked will control the call for another corner or line, which is mistakenly assumed to be at the same place, is well established. Oliver v. Mahoney, 61 Tex. 611; Gerald v. Freeman, 68 Tex. 201–204, 4 S. W. 256; Cox v. Finks, 41 S. W. 95; Burnett v. Gault, 54 S. W. 268; Taft v. Ward, 58 Tex. Civ. App. 259, 124 S. W. 437; Lafferty v. Stevenson, 135 S. W. 216; Koch v. Poerner, 55 S. W. 386.

[3] When surveys Nos. 399 and 400 are constructed as above indicated by us, each has exactly the acreage called for in its respective field notes, and the land patented to plaintiff Reinhard lies between the bounda-

ries of said surveys. The stipulation in the certificate that the surveys should connect with each other cannot affect the fact that as actually located the surveys did not connect, any more than the recital of the surveyor in his field notes to the effect that his corner, established on the ground, corresponded with the northeast corner of 399. These matters show what the surveyor thought he was doing, but his field notes show what he actually did.

As the land sued for was not included in surveys 399 and 400, title thereto remained in the state and passed to plaintiff by virtue of the patent issued to him, and he is entitled to recover it. The court rendered the only judgment that could have been rendered upon the facts proven, and it is unnecessary to pass upon the assignments complaining of the admission in evidence of a letter from defendant to the Commissioner of the General Land Office and the reply thereto.

The judgment is affirmed.

## On Motion for Rehearing.

Appellant is very confident that no vacancy existed between surveys Nos. 399 and 400, and yet it is evident that he has no well-defined theory on the question whether the land patented to Reinhard is a part of survey 399 or whether it is a part of survey 400. We have stated our views in regard to the rules to be followed in locating the surveys on the ground; but appellant, instead of taking up each survey separately and pointing out what he conceives to be the error committed by us in locating such survey, confuses the issues by attempting to discuss both at once and by overlooking salient features relating to each. It is said that the call in the field notes of 399 to run east, 1,792 varas conflicts with the call for the east line of 399 to be the west line of 400, overlooking the fact that in the field notes of 399 there is no call for the west line of 400, and that the law will not permit us to look to the field notes of No. 400 to create an ambiguity in the unambiguous field notes of No. 399.

While, as we have held, no calls in the field notes of No. 400 can be read into those of No. 399 to create an ambiguity, we fully recognize the fact that if it can be shown that Bohme actually ran out the corrected survey No. 399 and drove a stake and made a mound, not at a point 1,792 varas east of the beginning corner, but at a point 147 varas further east, then the call for course and distance in the field notes of No. 399 would give way to the actual location of the stake and mound.

While Brauer's field notes of No. 399 contained a statement that the northeast corner of No. 399 was where he located the northwest corner of No. 400, his letter written at the time shows that he found nothing on the ground to show that the point was the northeast corner of No. 399, and other testimony

shows that Bohme made no marks for such corner which could have been found by Brauer. The court was certainly justified in constructing survey No. 399 by course and distance, giving it the exact acreage called for. The case of Moore v. Stewart (Sup.) 7 S. W. 771, relied upon by appellant, was a fact case, and the evidence can by no means furnish a criterion by which to determine whether the judgment in this case is supported by evidence.

[4] Much is said about rules relating to surveys made by the same surveyor at the same time, which has little or no application to the facts of this case, for the resurvey of No. 400 determines its boundaries, and it was made by a different surveyor some years after the field notes of No. 399 were corrected. Let us see whether the field notes of No. 400 must be held to include the Reinhard land, or whether the judgment of the court is supported by evidence justifying the location of same so as not to include the Reinhard land. When Brauer made the resurvey of No. 400, had he called to run west from the two noted bearing trees 261 varas to the northeast corner of No. 399, and called for nothing else, there is no doubt that the distance would have given way to the call for the corner; but he did not do so, but marked a corner on the ground and called for the bearing tree in his field notes. In the case of Goldman v. Hadley, 122 S. W. 283, the surveyor, it was claimed, actually marked a line which did not correspond with the line of the survey called for in his field notes; but in his field notes he did not identify the line which was to bound the survey in any other way than by simply designating it as the line of the other survey. Of course, in such a case the field notes govern, and distance would give way to the call for the line of the other survey regardless of whether he marked trees not called for in his field-notes. This court said: "Had the field notes called for a marked line and other objects, it would have been different." In this case, Brauer's field notes called for the line of No. 399, but also called for a marked bearing tree by which the corner was fixed, and it seems clear that the marked corner and distance control the call for the line of the older survey.

The motion is overruled.