BROOKS et al. v. SLAUGHTER.
(No. 1588.)

(Court of Civil Appeals of Texas. Amarillo.
Jan. 7, 1920. On Motion for Re-
hearing, Feb. 18, 1920.)

1. BOUNDARIES ⊜3(1) — CALL FOR CORNERS
CONTROLS CALLS FOR COURSE AND DISTANCE.

A call in a survey for corners on the
ground is superior to calls for course and dis-
tance.

2. BOUNDARIES ⊜25 — SUBSEQUENT SURVEYS
COULD NOT CHANGE LOCATION IDENTIFIED BY
PRIOR NOTES.

When field notes of a survey were made
out and filed the land was to be identified and
located from them, and subsequent work in
surveying could not change such location, since
the field notes of junior surveys cannot control
the location of senior surveys.

3. BOUNDARIES ⊜10 — ALL CORNERS AND
FIELD NOTES IN SYSTEM OF SURVEYS TO BE
CONSIDERED IN LOCATING ANY SURVEY.

All corners and field notes of a system of
surveys may be looked to in locating any of the
surveys in the system, and it is not necessary
to constitute a block of surveys one system that
the surveying be done on the same date, but it
is only necessary the work be continuous from
day to day and connected as part of the series
of surveys.

4. BOUNDARIES ⊜8—RUNNING LINES FROM
CORNERS ON TRUE COURSE TO LOCATE SUR-
VEYS.

Where there is no uniform variance from
true course found in any of the lines of a sur-
vey actually run, but there is a difference in
the course of the east line, and the angle at a
corner is not a right angle, as required to make
a proper square survey pursuant to Rev. St.
1911, art. 5339, in locating the surveys of the
block the lines running southward and west-
ward from certain corners should be run on
true course.

5. BOUNDARIES ⊜10—STATE AND SUCCESSORS
NOT BOUND BY ACT OF SURVEYOR IN PLACING
WITHIN CORRECTED FIELD NOTES LANDS NOT
EMBRACED IN ORIGINAL SURVEY.

If an original survey did not embrace lands
in controversy, the act of the state surveyor in
placing them within corrected field notes of
such survey on his resurvey of the lands, and
the subsequent approval of the field notes by
the land commissioner, did not bind the state
and those claiming under it.

6. BOUNDARIES ⊜10—STATUTE AS TO MAPS
NOT GIVEN CONTROLLING EFFECT.

Rev. St. 1911, arts. 5396–5400, providing all
surveys by virtue of valid alternate scrip should
segregate from the public domain all lands em-
braced in surveys or blocks of surveys as are
evidenced by their corners and lines, or by
calls for natural or artificial objects, or the
corners and boundaries of other surveys, or
by maps and other records in the land office,
did not give controlling effect to any one meth-
od of locating surveys, or define the proper

function of the various means that might be re-
sorted to in locating boundaries, but merely re-
ferred to the different recognized means; the
intent being that application of means should
be governed by principles of boundary law and
the use of maps under certain circumstances
being recognized.

7. BOUNDARIES ⊜25—EFFECT OF FILED MAP
OF SUBSEQUENT SURVEY.

A map of a subsequent survey filed in the
general land office cannot be permitted to af-
fect the location of lands as evidenced by
field notes based on established corners on the
ground and filed prior to filing of the map.

8. BOUNDARIES ⊜3(1)—CALL FOR ESTABLISH-
ED CORNER CANNOT BE DISREGARDED IN FA-
VOR OF CALL FOR UNMARKED LINE.

In determining the boundaries of surveyed
lands a call for an established corner cannot be
disregarded in favor of a call for an unmarked
open line of an adjoiner.

9. BOUNDARIES ⊜27 — PLAINTIFF MUST RE-
COVER ON STRENGTH OF TITLE.

Plaintiff in a boundary suit must recover on
the strength of his own title.

10. PUBLIC LANDS ⊜180—STATE ALONE CAN
QUESTION UNAUTHORIZED SALE BY SURVEYOR
OF DISTRICT.

Under Rev. St. 1911, arts. 5458, 5459,
though the surveyor of a land district had no
authority to make sale of land in another coun-
ty, no one but the state can question such sur-
vey and sale by him.

11. EVIDENCE ⊜121(1), 317(2) — DECLARA-
TIONS OF SURVEYOR AT TIME OF SURVEY ARE
RES GESTÆ BUT IF AFTER SURVEY ARE HEAR-
SAY.

Declarations made by the original surveyor
of land at the time of the survey might be ad-
missible in a boundary suit as res gestæ, even
if the surveyor were living, but such declara-
tions subsequently made are hearsay, and to
be admissible must be brought within some
recognized exception to the hearsay rule.

Appeal from District Court, Garza Coun-
ty; W. R. Spencer, Judge.

Suit by John B. Slaughter against L. N.
Brooks and others. From judgment for
plaintiff defendants appeal. Judgment af-
firmed in part; in other respects reversed
and remanded.

Ben H. Kelly and Don A. Bliss, both of
San Antonio, and W. F. Kelly, of Post, for
appellants.

J. H. Beall & Son, of Sweetwater, for ap-
pellee.

BOYCE, J. This is a boundary suit, and
requires a decision as to whether there is a
vacancy between the south lines of sections
1326 and 2328, block 1, H. & O. B. Railway
Company surveys, and the north lines of sec-
tion 403 and section 10, Tyler Tap Railway
Company surveys, in Garza county. The
appellant L. N. Brooks was awarded, on his

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

application to purchase said land as being vacant and belonging to the public school fund, a strip of land between the said surveys, which strip of land so awarded is 537 varas wide on the east end and 526 varas on the west, and extends east 2,180 varas from the northwest corner of said section 403. The appellee is the owner of sections 1226, 1228, and 403, and, as plaintiff, recovered judgment against appellants in the court below on the theory that the land claimed by the appellant is a part of said sections 1326 and 1328.

We attach hereto a plat which appellants contend correctly shows the relative position of said sections 1326, 1328, 403, and 10, as they should be located on the ground. We do not adopt the plat as being correct in all particulars, but it may be conveniently referred to in connection with our further statement of the facts, and in connection therewith will be sufficient to a general understanding of the issues to be decided.

The evidence establishes the following facts:

(1) All of the actual surveying upon which the field notes of all of the surveys shown in the plat were based was done by Jasper Hayes, though such field notes were signed by other parties. The field notes of the sections in block 1, H. & O. B. Railway Company, were signed by Geo. Spiller, the surveyor of Young district. The corners shown on the map as the Cobb corner, Black Bottle corner, and corners D and E, were put in by Jasper Hayes on September 27 and 28, 1877, and the field notes of those surveys upon which we have placed a check mark thus, +, were dated September 27, 28, and October 1, 1877. These corners just referred to are identified on the ground; it appearing that the Cobb and Black Bottle corners were established on September 27, 1877, and corners D and E on September 28, 1877; the course of the line from the Black Bottle corner to the Cobb corner is N. 89° 10′ W.;

that from the Black Bottle corner to corner D is S. 1° 35′ E.; and that from corner D to E is off true meridian 13′, the evidence not disclosing which way. The courses called for in the field notes of the surveys are north, south, east, and west. There is an excess in the distance called for by the field notes between all the corners except corners D and E. The field notes of sections 1326 and 1328 tie back through their calls and the respective calls of the field notes of intermediate surveys to corners D and E. Both parties assume that they also tie to the Cobb corner. The field notes of intervening surveys necessary to enable us to say definitely whether this is true are not in the record. However, all of the maps introduced in evidence indicate that this is correct, and we will assume that this statement, concurred in by both parties, is correct. A mound is called for at the northeast corner of section 1313, and a pile of stone at the northwest corner of 1225, but these were not found on the ground. There do not appear to be any calls for any marks on the ground in the field notes of any of the other surveys of 1877 except the calls for the corners we have mentioned, and there is nothing to show that the surveyor was on the ground at any other place, and reference to his field book failed to show that he ran any other lines at this time.

(2) In January, 1878, Hayes returned to the vicinity of those lands, and running west from the Cobb corner established on January 10, 1878, corner A; there being an excess of 104 varas in the distance called for between the Cobb corner and corner A. From said corner A he ran a line three miles south, thence three miles east, thence south ten miles, where he put in the corner not shown on the map. So far as appears from this record these two corners were the only marks of this survey put in on the ground. The field notes of most of the other surveys not checked by us on the map, and whose numbers run in the twelve, thirteen, and fourteen hundreds, were dated January 10 and 11, 1878; the locations being in the name of various grantees. The field notes of this January work call to tie these surveys to the surveys located in September and October, 1877.

(3) In May, 1878, Hayes again returned to this vicinity and put in the Grapevine, Camp Branch, and Annheuser Beer Bottle corners; at the same time he established nine corners north of the Camp Branch corner, including the corners at the northwest corners of sections 1361 and 552, which we have marked F and G. These corners just mentioned are also found on the ground. There is an excess of 95 varas between the Camp Branch corner and Corner G; 55 varas of this excess being between the Camp Branch corner and corner F. At the same time said

surveyor ran from the Annheuser Beer Bottle corner westward and northward, putting in other corners not shown on the map. A more detailed statement of this further work appears from the opinion of this court in the case of W. R. Standefer v. W. F. Vaughan, No. 1557, 219 S. W. 484, this day handed down, but we do not deem the work done west of this locality to be material to a determination of the questions now before us. The field notes of surveys 403, 404, 405, 406, 1361, 552, 553, etc., were based on this work done in May, 1878, and call for such corners and tie to each other. The corners north of the Camp Branch corner were earth mounds and pits. The field notes of section 553 call for an earth mound at its northeast corner, described as being the southeast corner of section 1367, and southwest corner of section 1365. The field notes of section 403 call for its northwest corner to be at the southwest corner of 1326, a mound and two pits, and its northeast corner to be at the southeast corner of 1326, an earth mound. As we have already stated, the field notes of sections 1326 and 1328 do not call for any mark of any kind at these corners. The line of corners north of the northeast corner of 553, put in in May, 1878, were evidently supposed to be the corners of sections 1365, 1322, etc., although the field notes of those surveys were dated in October, 1877, and January, 1878, and had already been filed in the land office, and such field notes did not call for any such corners. The field notes of section 10 are dated in May, 1879, and call to begin at the southeast corner of 403, 1,940 varas north of the Grapevine corner, and also call for its northwest corner to be the northeast corner of 403 and the southwest corner of 1328.

(4) A map entitled "Fannin Scrip, E. L. & R. R. R. R. Co. Sketch," and purporting to be signed by J. Hayes, was filed in the land office on July 22, 1878. This map shows sections 403 and 404 to lie south of and corner with sections 1324 and 1326. The maps in use in the land office for many years thereafter showed said sections to be thus contiguous.

(5) If the south lines of sections 1326 and 1328 be located by course and distance from corner E, such lines will be several hundred varas north of the north lines of sections 403 and 10, located from corner G and the Grapevine corner, and if the western lines of said sections 1326 and 1328 are located by course and distance from either corner E or the Cobb corner, said western lines will be several hundred varas east of the western lines of said sections 403 and 10.

(6) Corrected field notes of the H. & O. B. Railway Company surveys and of the Tyler Tap Railway Company surveys, including the sections we have referred to by number, were filed in the general land office in 1907;

the resurvey being made by W. D. Twitchell, state surveyor. The corrected field notes of said sections 403 and 10, Tyler Tap Railway Company, locate such surveys from the Grapevine corner and corner G. Corner B, marked "Twitchell corner" on the map, was put in at the time of this resurvey and permanent monuments established at each of the other corners of these surveys. The corrected field notes left no vacancy; the northwest and southwest corners of sections 403 and 1326, respectively, being identical, etc.

### Conclusions of Law.

Based on the foregoing facts we have reached the following conclusions as to the questions of law involved.

[1] 1. The south lines of said sections 1326 and 1328 should be located by course and distance from corner E. Their western lines should be located by course and distance from the Cobb corner. Since the H. & O. B. Railway Company surveys were built up from the lines run by the surveyor from the Cobb corner to the Black Bottle corner and thence south to corners D and E, we think that each of these corners should be regarded in constructing the system of surveys based thereon, so that the surveys of the block will hold the excess east and west between the Cobb corner and the Black Bottle corner and north and south between the Black Bottle corner and corners D and E. But when we go south of corner E there is nothing in the record that will justify giving an excess in the north and south distance calls of the field notes of such surveys. Likewise when we go west of the Cobb corner there is no support for an excess in the east and west lines of such surveys. We cannot continue the excess simply because we may find an excess in the lines which we find were actually run. The excess in these lines is justified only because the call for corners on the ground is superior to the calls for course and distance, but when we pass those corners and find nothing on the ground or other call that will override the calls for course and distance we must then give effect to such calls for course and distance.

[2, 3] 2. The call of the T. T. Railway Company surveys, sections 403 and 553, etc., which were surveyed in May after the field notes of sections 1326 and 1328 had been filed in the general land office, cannot locate the lines of the older surveys. When the field notes were made out and filed the land was to be identified and located from them, and subsequent work could not change such location. State v. Post, 169 S. W. 405; Williams v. McLeroy, 135 S. W. 252. Appellee does not take issue with the general proposition that the field notes of junior surveys cannot control the location of senior surveys, but insists as a controverting proposition

that it is to be presumed that surveys 1326 and 1328 and the other surveys of block 1, H. & O. B. Railway Company, were surveyed on the ground by Jasper Hayes, and that when he made the calls for the lines of the H. & O. B. Company surveys in the May work he knew where such lines were located; that such calls are thus evidence of the location of the prior work. The answer to this controverting proposition is in the fact that the evidence rebuts the presumption that the lines of the surveys in block 1, H. & O. B. Railway Company, were run out on the ground other than as already indicated. We recognize fully that all corners and field notes of a system of surveys may be looked to in locating any of the surveys of the system, and that it is not necessary, in order to constitute a block of surveys one system, that the surveying be done on the same date, and that it is only necessary that the work "was continuous from day to day, and connected as a part of the series of surveys, though such work may have been continued for many days, or even weeks and months." State v. Dayton Lumber Co., 159 S. W. 395. Regard for this principle was the controlling factor in the decision of the case of W. R. Standefer v. W. F. Vaughan, No. 1557, decided by us on this date. But the evidence in this case is, in our opinion, insufficient to show that the work of September, 1877, and that of May, 1878, is one system. The record shows that the work of September, 1877, in so far as the locations based thereon were concerned, was complete before the work of May, 1878, was done. The field notes based on the 1877 work were made out and filed, and must be held to have appropriated specific land prior to the work in May, 1878, when the same surveyor returned and did other surveying for the purpose of locating lands for the holders of other certificates.

[4] 3. The question next arises as to whether the course westward from corner E and southward from the Cobb corner, in order to locate the surveys based on this work, should be on a true course. Various suggestions are made by the parties to this appeal as to this question. One is that the south line from corner E should parallel the line between the Cobb and Black Bottle corners and the west line from the Cobb corner should parallel the lines between the Black Bottle corner and corners D and E; another suggestion is that the lines should be run at right angles to the north and east lines as established on the ground by the corners referred to. The law required that the land should be surveyed in a square. Article 5339, R. S. And that was the intention of the surveyor, as evidenced by his field notes. So that it may possibly be true that if the lines actually run had disclosed a uniform variance from the true course this same divergence should be used in constructing the other lines of the block. Note 16a, 9 C. J. 166. But, as we have already noted, there is no uniform variance from true course found in any of the lines actually run. There is a difference in the course of the east line itself and the angle at the Black Bottle corner is not a right angle. Under such circumstances, we think that in locating the surveys of the block the line southward from the Cobb corner and those westward from corners D and E should be run on true course. Gilbert v. Finberg, 156 S. W. 512.

[5-7] 4. If the original survey did not embrace these lands in controversy, the act of the state surveyor in placing them within corrected field notes of such surveys on his resurvey of the lands, and the subsequent approval of these field notes by the land commissioner, did not bind the state and those claiming under it. State v. Post (Sup.) 169 S. W. 407; Id., 169 S. W. 405. In these cases the very same resurvey was in question. The resurvey purported to have been made by virtue of the act of 1887, referred to by the Supreme Court and the Court of Civil Appeals in their decisions of the case. We are now referred by appellee to the Act of 1889, pp. 103, 104, which now appears in our statutes as articles 5396 to 5400, as sustaining this resurvey. In the first place, said act can have no application to this case because all of the surveys herein involved were patented long prior to the enactment, and it is expressly provided by section 5 thereof (R. S. 5400) that nothing in the act "shall apply to any lands for which patent has been issued." But, even if the act were applicable here, we do not think that the land south of the south lines of sections 1326 and 1328, and north of the north lines of sections 10 and 403, located as we have indicated they should be, could be said to be land embraced in any of the said surveys under the terms of said act of 1889. The act provided that all surveys made by virtue of valid alternate scrip should segregate from the mass of the public domain all lands embraced in said surveys or blocks of surveys, "as evidenced by the corners and lines of same, or by calls for natural or artificial objects, or the calls for the corners and boundaries of other surveys or by the maps and other records in the general land office." As we have already seen, the surveys, as evidenced by the field notes and corners on the ground, do not embrace the strip of land in question. It is true it would appear from a map filed by Jasper Hayes in July, 1878, after filing of the field notes of said surveys, that there is no vacancy between said surveys 1326, 1328, and surveys 10 and 403. We do not, however, construe the act as giving an absolutely controlling effect to any one method of locating the surveys, or as

attempting to define the proper function of the various means that might be resorted to in locating the boundaries of the surveys. The act merely referred to the different recognized means of locating land; it being the intention of the Legislature, we think, that the application of these means of location should be governed by the general principles of boundary law, otherwise conflicting results would ensue from the application of the law. The use of maps, under certain circumstances, for the purpose of the ascertainment of boundaries of land, was recognized as a part of the law, and it was, we think, the intention of the Legislature to authorize a reference to maps in these cases for the purpose of ascertaining the boundaries of surveys subject to the general principles of boundary law. It is not necessary for us at this time to go into a discussion of the effect that is to be given maps in the location of boundaries. We think it is clear that the map filed under the circumstances we have stated cannot be permitted to affect the location of lands as evidenced by field notes based on established corners on the ground and filed prior to the filing of the map. Finberg v. Gilbert, 104 Tex. 539, 141 S. W. 87; Smith v. Boone, 84 Tex. 526, 19 S. W. 702. What we have said in this connection is sufficient as to the general contention made by appellee as to the effect of the maps filed in the land office showing the location of these lands.

5. The record does not enable us to apply the principles which we have announced so as to definitely locate the south lines of sections 1326 and 1328, with reference to established corners on the ground, so that we might render a judgment here. The only data from which we could so locate these lines is the run of Surveyor Standefer from the northeast corner of section 10, an established corner put in on resurvey, to the southeast corner of section 1227. The courses given in the field notes of this run are not on true course, and even if we were to take these and have a surveyor correct the run to a true course, so as to get the proper location on the ground of these south lines, there is a discrepancy in the two statements of the courses which would prevent us from doing this. See Statement, pp. 105 to 106, and 114 to 117. For the same reason we are unable to locate on the ground the east and west lines of sections 1326 and 1328 from the Cobb corner.

[8] 6. Survey 403 should be located from the Grapevine and Camp Branch corners and corners F and G. The nine surveys, of which 403 is the northeast and 552 the northwest, do truly belong to one system of surveys, and the northeast corner of section 403 should be placed at the intersection of the lines run north from the Grapevine corner and east from corner G. Corner G will hold the excess north and south between it and the Camp Branch corner. The lines of 403, 404, and 552 cannot be extended beyond the points we have indicated to reach surveys 1366, 1324, 1326, and 1328, of the H. & O. B. Railway Company surveys, because such construction would disregard the footsteps of the surveyor as evidenced by the mound corner at the northwest corner of section 552, and thus disregard a call for an established corner in favor of a ·call for an unmarked open line of an adjoiner. State v. Post, 169 S. W. 405; Polk v. Reinhard, 193 S. W. 687; Standefer v. Vaughan, supra, and authorities there cited. We take it that the resurvey of section 403 as embraced in the corrected field notes located it in the manner that we have indicated it should be located, though there is some discrepancy in the field notes as they appear in the record. As we have stated, there was a 95-vara excess between the Grapevine corner and corner G, 55 varas of which was between the Grapevine corner and corner F. Now in the corrected field notes of 401 it is given an excess north and south of 55 varas and in the corrected field notes of section 10 it is given an excess of 40 varas north and south, but 403 is given an excess of 55 varas north and south and yet its east corners are common, according to the field notes, with the west corners of section 10. It sufficiently appears, we think, that this disprepancy is due to some clerical error, as the judgment based on the corrected field notes gives said section 403 an excess north and south of 40 varas. So we conclude that the judgment properly locates said section 403 on the ground, and we affirm the judgment in favor of appellee as to said section 403, so located on the ground, though the calls for the corners of the H. & O. B. Railway Company surveys should be eliminated.

[9, 10] 7. Appellee asserts that the sale of the vacant land to appellant Brooks was void because the survey upon which the sale was based was made by the surveyor of the Howard land district, and that he was not authorized to make the survey because it is shown by the maps in evidence that the land is in Garza county. It is true that the maps show the land to be situated in Garza county, though the field notes of the survey call for its location to be in Lynn and Garza counties. As the plaintiff must recover on the strength of his own title, this would not be material in determining whether the plaintiff would be entitled to judgment, but it does become material in consideration of the defendant's cross-action. We think that, even if it be true that the surveyor of the Howard land district had no authority to make the sale, yet no one but the state could question the sale of the land to appellant Brooks on this account. R. S. arts. 5458 and 5459; Erp v. Tillman, 103 Tex. 574, 131

S. W. 1061; Erp v. Robinson, 106 Tex. 143, 155 S. W. 181, 157 S. W. 1160 (4) and (5). The award was made to appellant Brooks on the 31st day of July, 1916. This suit was not brought by appellees under any claim of "right to purchase" said land awarded to appellant. It is provided by said article 5458 that all persons claiming the right to purchase such lands "sold * * * to any other person [before or after the passage of the act] under any provision of the law authorizing the sale * * * of any of said lands shall bring his suit therefor within one year after the date of the award of such sale," etc. Article 5459 provides that if no such suit has been instituted "it shall be conclusive evidence that all the requirements of the law with reference to the sale or lease of such lands has been complied with." Under the provisions of this act of the Legislature, as construed by the cases we have referred to, the appellee was in no position to question the validity of the sale to appellant Brooks on account of the irregularity in the survey of the land. Even in the absence of the statute, we would be inclined to think that after the sale only the state or some one holding under it, or attempting to purchase the land under the provisions of law, could question the validity of the sale made on the irregular survey. Bunnell v. Sugg, 135 S. W. 701; Frontroy v. Atkinson, 45 Tex. Civ. App. 324, 100 S. W. 1023; Dunn v. Wing, 103 Tex. 393, 128 S. W. 108.

[11] 8. We think the objection to the evidence of the witness Marhoff, reproducing the conversation between him and Jasper Hayes on the occasion when Marhoff and Hayes were on the land together in 1912, should have been sustained. It appears that said Hayes was alive and his place of residence known to plaintiff, and it does not appear that his testimony might not have been obtained. Declarations made by the original surveyor at the time of the survey might be admissible as res gestæ, even if the surveyor were living; but such declarations subsequently made are hearsay, and to be admissible must be brought within some recognized exception to the hearsay rule. George v. Thomas, 16 Tex. 92, 67 Am. Dec. 612; Russell v. Hunnicutt, 70 Tex. 657, 8 S. W. 500; Simpson v. De Ramirez, 50 Tex. Civ. App. 25, 110 S. W. 149; Hunnicutt v. Peyton, 102 U. S. 333, 26 L. Ed. 120. There is nothing in the record to bring the testimony referred to within any of the recognized exceptions. The evidence so admitted does not, in our opinion, affect the result, as it is to be determined from the present state of the record. We pass on this assignment, however, in view of another trial.

This general discussion will be a sufficient disposition of the various assignments. It results from what we have said that the judgment should be affirmed in so far as it awards to plaintiff judgment for said section 403, but in other respects it will be reversed and remanded.

### On Motion for Rehearing.

Appellant seems to be in some confusion as to our directions as to the method of locating sections 1326 and 1328. To be specific, the northeast corner of section 1313 should be located at the intersection of a line run south from the Cobb corner with a line run west from corner E, and surveys 1326 and 1328 should be located from this position of section 1313 by true course and distance according to the calls of their field notes and those of the intervening surveys back to said section 1313. These specific instructions are given on the theory that the field notes of the surveys of 1877 would by their calls locate the northeast corner of section 1313 south of the Cobb corner. As we stated in the original opinion, the field notes of all intervening surveys back to the Cobb corner do not appear in the record, so that our assumption that such field notes would so locate the northeast corner of 1313 with reference to the Cobb corner is based on the maps in evidence and general inferences to be drawn from the record. If this assumption should be proven to be erroneous, then the east and west position of said northeast corner of said section 1313 would be shifted according to the distance east or west of the line run south from the Cobb corner that it should be located according to the calls of its field notes and those of the intervening surveys, tying back to the said Cobb corner.

Lest we be misunderstood, we wish to say again that we do not adopt the plat attached to the opinion as being correct in all particulars. That part of the map which shows a separation of the surveys made in 1877, beginning with sections 1212 and 1218, and thence westward, is at variance with all other maps in evidence and theories as to the construction of the surveys, and we do not wish to be understood as approving such location of those lands. Our opinion has been written on the assumption that there is no such break in the construction of those surveys.

We have on original hearing duly considered all the suggestions made by the appellee in his motion for rehearing and no good purpose would be served by again reviewing them, as we believe that we have announced the proper method of locating the surveys in question according to the record presented to us.

The motion for rehearing will be overruled.