**BROOKS et al. v. SLAUGHTER.     (No. 1827.)**

(Court of Civil Appeals of Texas. Amarillo.
June 1, 1921. Rehearing Denied
June 29, 1921.)

**1. Boundaries** &#9755;25—**Subsequent survey held not to affect original survey.**

That a surveyor who had already surveyed a plot on returning later to survey subsequent locations which he tied onto his previous work does not make his later survey a part of the same system so as to eliminate a vacancy, and the subsequent approval of the corrected field notes by the land commissioner will not bind the state or those claiming under the state.

**2. Costs** &#9755;61—**Where both parties successful in part, costs were properly divided.**

In trespass to try title, where neither party was entirely successful, each recovering some land claimed by the other, costs were properly divided.

Appeal from District Court, Garza County; W. R. Spencer, Judge.

Suit by J. B. Slaughter against L. N. Brooks and others. There was a judgment for plaintiff, and defendants appeal. Modified and affirmed.

Ben H. Kelly, of San Antonio, for appellants.

Beall, Beall & Beall, of Sweetwater, for appellee.

BOYCE, J. This is the second appeal of this case. Brooks v. Slaughter, 218 S. W. 632. The same questions as to boundary are presented, and the facts are largely the same as on the former appeal. We therefore adopt the statement of facts as made in our former opinion, to which we add the following further statement:

Jasper Hayes, in the surveying of September and October, 1877, came to these lands on a line run from the north and east, arriving at the black bottle corner first. He then ran west to and put in the Cobb corner; thence south and east to the southwest corner of section 1207, at which place he put in a corner; thence east to the southeast corner of section 1203; thence south to the southwest corner of 1223 and east to the southeast corner of said section; thence south to a point one mile south of the southeast corner of 1228; thence east and south for some 12 or 15 miles. But no other corners were put in on the run south of corner E, which is claimed to have anything to do with the lines in controversy. Field notes of the surveys, including sections 1326 and 1328, based on this line, were, as stated in our former opinion, dated September 27, 28, and October 1, 1877. It does not appear when field notes were recorded in the surveyor's office. The field notes of some of the surveys were filed in the land office in November, 1877. Copies of the field notes of sections 1326 and 1328 were certified to by the district surveyor on January 7, 1878, as being of record in the surveyor's records for Garza county, and these certified copies were filed in the land office on January 17, 1878. The former statement of the January, 1878, run, made by Hayes, is sufficient except that we add that the excess distance north and south from the

Cobb corner to the cap rock corner at the south end of this run is such that, if the intervening surveys be constructed so as to distribute this excess between them, there would be but little vacancy between the lines of sections 1326 and 1328 on the north and sections 403 and 10 on the south. No surveys, as we understand it, called for the cap rock corner, and there are no calls for the lines run in January, 1878, except for corner A, west of the Cobb corner. The certificates of the sections which have their corner at corner A were not issued until in December, 1877. In the May, 1878, work Hayes began at the cap rock corner and ran to and put in the grapevine corner, from which point he established the other corners of the May work referred to in our former opinion. It does not appear when applications for survey of any of the land located by either of the surveys were filed with the surveyor. If section 1326 and 1328 be constructed by course and distance from the intersection of a line run south from the Cobb corner, with a line run west from corner E or D, there would be a vacancy of about 500 varas between the said sections and the north lines of sections 403 and 10. The trial court entered judgment for a strip of land 121 varas wide between these lines, it is unnecessary to state on what theory, except that he found that the surveys of September, 1877, January, 1878, and May, 1878, constituted one system, and gave some effect to the field notes of the latter surveys in locating the surveys of September, 1877.

[1] If it be true that the surveys based on the work of September, 1877, and January and May, 1878, are to be regarded as one block or system, so that the lines run and corners put in by Hayes in January and May, 1878, can affect the location of the lines of the surveys, based on the work of September, 1877, then there is no vacancy, and the judgment should have been for the defendant in error. The effort of the defendant in error on this appeal, as on the former, is to sustain this proposition. We do not think it sustainable. The field notes of the surveys, based on the lines run in 1877, were filed and recorded before the work of January, 1878. They were returned and filed in the land office independent of the work of January, 1878. They were not contingent on any future work and appropriated definite lands, the lines of which could not be affected or changed by subsequent surveys. The fact that Hayes later returned to survey other locations which he tied on to his previous work does not make his later survey a part of the same system so as to affect the first work. As we have already noted, some of the certificates on which the survey of January was made had not even been issued at the time of the September survey, and it does not appear that there had been filed an application for the survey on any of the certificates on which the surveys of January and May were made. Suppose that in the January run there had been a deficiency of distance between the Cobb corner and corner A, and between corner A and the cap rock corner, or that the course of the southerly run had been deflected more to the east than the general course of the September survey so that there would have been either a deficiency or overlapping instead of an excess; could it be reasonably contended that the owner of the prior locations and surveys would be required to stand the pro rata of any deficiency that would thus result? Yet, if the work is to be regarded as one block or system, so that a corner in any part of the work is to be given effect as to all the work, this would be the result. Hayes evidently did intend to tie his January work to the September surveys and the May surveys to the prior surveys; and in locating these junior surveys this intention, so far as possible and consonant with other legal principles applicable thereto, should be carried into effect. The corners and lines of the senior surveys may thus determine the location of the lines of the junior surveys; but the proposition cannot be reversed. It was perfectly natural that Hayes or any other surveyor, surveying lands subsequent to the survey of 1877, should begin on the prior work for the subsequent surveying. Surveys of different locations and blocks might thus be built up indefinitely on different trips made days, months, or years apart. All of such combined surveys are not one system of surveys or one block, in the sense in which it is used in the authorities relied on by defendant in error. Standefer v. Vaughan, 219 S. W. 484, and authorities; Hammon v. San Jacinto Rice Co., 229 S. W. 1013 (3), (4); C. J. vol. 9, 174. So we hold, as we did before, that the surveys of January and May, 1878, cannot affect the location of the lines of surveys 1326 and 1328.

On the last trial an issue was again made as to the courses to be followed in locating sections 1326 and 1328, and we again hold that the location should be made on true course from the Cobb corner and corner D or E, and not on a course to be run at right angles to the line between the black bottle corner and corner D. If we were seeking for facts to determine on what variation Hayes was running in doing the September work, the course between the black bottle corner and corner D would be of little value, for the reason that the surveyor did not run that line at all, but arrived at corner D by running west to the Cobb corner and thence south and east as we have stated, so that any errors, either of course or distance, in making this detour, would affect the course between these two corners. But, when we follow the lines on which the surveyor actually ran, his course varies from corner to corner. The course from the back bottle

corner to the Cobb corner is north of a true west course; the course between corners D and E is 13′ E of a true south course. So that, as we held before, since it does not appear that the surveyor was running on any uniform variation from a true course, we should follow the call of the field notes for the location of these lands, after passing lines and corners fixed by marks on the ground.

When so located, the southeast corner of section 1326 and the southwest corner of section 1328 will be 503 varas north 7′ east and 170 varas east of the northwest corner of survey No. 403, located by Twichell's corrected field notes, and settled by previous judgment in this case, and the L. N. Brooks survey No. 1, owned by plaintiffs in error, will be bounded as follows: Beginning at a stone set for the northeast corner of survey No. 403, block 1, Tyler Tap Railroad Company; thence north 89° 42′ west with the north line of said survey 403, 2,090 varas to a concrete monument for the northwest corner of said survey 403; thence north 0° 20′ east 502 varas, to a point; thence east 2,191 varas to a point; thence south 513 varas to a point; thence north 89° 42′ west 103 varas to the place of beginning. Judgment will be entered for the plaintiff in error for the recovery of said survey No. 1, L. N. Brooks, and in favor of the defendants in error for the recovery of the south ½ of section 1326 and the west ½ of the southwest ¼ of section 1328, located as indicated.

The award by the land commissioner to L. N. Brooks did not include all the land which he had made application to survey and purchase. His application included additional lands east of the Brooks survey, as we have located it, between the south line of section 1328 and north line of section 10; and plaintiff in error, by a count in his cross-action, in his answer, sought to recover not only the land that had been awarded him on his application, but also the land not awarded, but included in his application for survey and purchase. The court sustained exceptions to this pleading, and this ruling of the court is complained of by assignment. The petition showed no such title to the unawarded land as will support an action of trespass to try title. If the plaintiffs in error have any right to purchase said land, they have their remedy in a proceeding against the land commissioner. We think the court properly sustained the exception to this portion of the cross-action.

[2] The trial court adjudged the costs to be paid equally by the plaintiff and the defendants, and the plaintiffs in error complain of this action of the court. Neither party has recovered all the land claimed by them in their respective pleadings, and each party has recovered some land claimed by the other party. So that we think a division of the costs in the trial court is equitable. Defendants in error will be adjudged to pay the costs of this appeal.

It is not necessary to announce a decision as to those assignments which complain of the admission of the copy of the Jasper Hayes' field book and Marhoff's testimony as to conversations with Hayes as to his work in the field, since a conclusion as to such matters does not affect the judgment which we think should be rendered.

The judgment of the trial court will be modified as indicated and affirmed.