**MAXCY v. NORSWORTHY et al.   (No. 9285.)**

Court of Civil Appeals of Texas.   Galveston. June 13, 1929.

Rehearing Denied July 18, 1929.

L. B. Moody, of Houston, for appellant.
A. D. Dyess, of Houston, for appellees.

GRAVES, J.   The appended statement is acquiesced in as being substantially correct:

"This is an action of trespass to try title, filed by appellant against appellees in the district court of Harris County, Texas, on April 16, 1924, to recover a tract of 36.5 acres of land out of the north end of the Harris & Wilson Survey and described as beginning at the southeast corner of the J. W. Maxcy 37.2 acre patented survey and running thence east along the south line of said survey, calling for the southwest corner of the Thomas Earl

Survey at 200 vrs., and thence to Green's Bayou; thence in a southerly direction along Green's Bayou 147.6 vrs.; thence west ·1396 vrs.; thence north 147.6 vrs. to the place of beginning.

"This is a severed branch of the suit as originally filed, in which David A. Oates was a party; the only defendants in this branch of the suit are Annie E. Norsworthy and her husband, Archie Norsworthy.

"Defendants answered by a general demurrer—general denial; pleading that they claimed to own the land involved in this suit as being a part of the Thomas Earl Labor; the three, five and ten year statutes of limitation and, in connection with these pleas of limitation, that they are not guilty of the injury complained of in plaintiff's petition. They further pleaded that the boundary between the Harris & Wilson and Thomas Earl Surveys was established by agreement, and alleged they are the owners of the property involved as a part of the Thomas Earl Survey also by reason of the three, five, and ten years statutes of limitation.

"By supplemental petition, plaintiff denied all of the allegations contained in defendants' answer, and plead not guilty thereto.

"The trial was before a jury, and, at the conclusion of the evidence, plaintiff requested the court to charge the jury peremptorily to return a verdict in his favor, which the court refused to do;· to which the plaintiff excepted. The case was submitted upon the following special issues:

"Special Issue No. One: 'Where is the north line of the Harris and Wilson Survey as same is located on the ground? You will answer that "It is coincident with the south line of the John W. Maxcy Survey and with the prolongation of said line to the east to the bayou," or "It is marked by the old wire fence," as testified to on the trial hereof.'

"Special Issue No. Two: 'Have the defendants, either in person or in connection with other persons claiming under them or under whom they claim, had peaceable and adverse possession of the land in controversy, cultivating, using or enjoying the same, for any period of ten years before the filing of this suit on April 16, 1924? You will answer "They have," or "They have not," as you may find the fact to be.'

"Plaintiff objected to the submission to the jury of Special Issue No. One, on the ground that the location of the line in question had been established in the location claimed by plaintiff in a former suit between the same parties; and to No. Two upon the ground that there was no evidence before the jury upon which they could legally answer such issue in the affirmative; the objections were by the court overruled, to which plaintiff excepted.

"The jury answered to Special Issue No. One: 'It is marked by the old wire fence.'

"To Special Issue No. Two they answered: 'They have.'

"Upon motion of defendant, judgment was entered on May 14, 1928, that plaintiff take nothing by his suit, and that defendants recover the title and possession of the land in controversy, describing the same, however, as being a part of the Thomas Earl Labor."

From the decree so entered below, the plaintiff's appeal has been duly presented here.

Appellant's contentions in this court may be thus summarized:

(1) The undisputed evidence showing, first, that in a former suit in the same court for the same land between the same parties among others (No. 60798, J. W. Maxcy et al. v. Annie E. Oates et al.), which involved the location on the ground of the Thomas Earl survey, judgment upon the merits entered fixing the Earl's south line as claimed herein by appellant—that is, as being both coincident with the north line of the Harris and Wilson survey and a prolongation east of the south line of the J. W. Maxcy survey—in that its southwest corner, which necessarily determined the position of its south line also, was located as being coincident with the southeast corner of the J. W. Maxcy survey, second, that its south line is a straight one running directly east from such corner coincidently with the Harris and Wilson north line, appellees should have been held estopped from claiming and the jury denied the opportunity of finding otherwise.

(2) The uncontradicted evidence showing that the north line of the Harris & Wilson and the south line of the J. W. Maxcy surveys are coincident, the former constituting a prolongation of the latter to the east, and there being no evidence that the former· is marked by the wire fence testified about, the jury's answer to issue No. 1 was wholly without support.

(3) There was no evidence whatever supporting the submission of or the jury's answer to issue No. 2.

(4) The court erred to the prejudice of appellant in admitting in evidence the map of the Harris & .Wilson league compiled by himself November 20, 1916, which showed on· its face that it was only a compilation of the field notes of others, and not the result of an actual survey by himself.

(5) Since plaintiff's petition herein described the .tract sued for as beginning at the southwest corner of the J. W. Maxcy 37.2-acre patented survey, the patent of that survey was admissible for the purpose of identifying this tract, and the court erred in excluding it.

(6) The court prejudicially erred in admitting evidence of the fact that appellant had at one time attempted to establish a vacancy between the Harris & Wilson and the Earl surveys, since it undisputedly herein appeared

that the north line of the former and the south line of the latter were coincident; hence this land was either in the one survey or the other.

(7) Appellees having shown no title whatever, by limitation or otherwise, and appellant having, from undisputed evidence, shown a perfect title to the north 252 acres of the Harris & Wilson survey, of which the tract sued for is a part, he was entitled to the peremptory instruction he requested.

(8) "The overwhelming preponderance of the evidence showing that the north line of the Harris & Wilson survey is coincident with the south line of the John W. Maxcy survey and with a prolongation of said line to the east to the bayou, and the only evi-dence to the contrary being the testimony of the defendant A. M. Norsworthy, that from the year 1907 up until 1916, it was the general reputation that the line between the Harris & Wilson and the Thos. Earl surveys was where the old wire fence is situated, it is manifest that the answer of the jury to Special Issue No. One, that the north line of the Harris & Wilson survey is marked by such old wire fence is the result of passion or prejudice or some other improper motive, and it was prejudicial error for the court to refuse plaintiff's motion to set it aside and grant him a new trial."

Concluding that the jury's answers to both special issues were without sufficient support in the evidence, that neither Maxcy's 1916 map of the Harris & Wilson survey nor the testimony as to his having formerly sought to establish a vacancy between it and the Earl were admissible in the circumstances, but that the proffered patent of the J. W. Maxcy survey should have been received for the purpose offered, we sustain such of appellant's presentments as so contend, overruling all the others.

■ In suing for the 36.5 acres in controversy, appellant's petition described its north line as beginning at the southwest corner of the J. W. Maxcy 37.2-acre patented survey, this averment being denied by appellees in their pleadings, but when the patent thus expressly called for was offered in evidence, an objection that it was immaterial to any issue was sustained. This was clearly error, since the appellant had the burden of showing the location on the ground of the tract he so claimed, and the patent was competent evidence for that purpose. It is true the Maxcy survey was, by 80 years, a junior one to the Thomas Earl; hence the latter could not be located by calls for it in the former (Bennett v. Latham, 18 Tex. Civ. App. 403, 45 S. W. 934; Goodson v. Fitzgerald, 40 Tex. Civ. App. 619, 90 S. W. 898; Brooks v. Slaughter [Tex. Civ. App.] 218 S. W. 632, 232 S. W. 856), but that was not the point, it being merely one of the establishment by appellant of his allegation.

■■ The map of the entire Harris & Wil-son league, the court admitted over appellant's protest, showed upon its face that it had only been compiled in 1916 by appellant from the field notes left by another surveyor, Gillespie, and did not reflect an actual survey made by himself. The undisputed evidence aliunde was to the same effect, and there was no showing whatever as to whether or not Gillespie's survey had been an accurate or correct one. The rule that should have excluded it in these circumstances is thus stated in 22 Corpus Juris, 912: "A map or diagram cannot be received as evidence per se independently of the testimony of the witness verifying or accompanying it." See, also, Smith v. Bunch, 31 Tex. Civ. App. 541, 73 S. W. 559, 562.

■ Likewise plainly prejudicial was the admission of the testimony to the effect that, some years before, appellant had attempted to establish a vacancy on land as lying between the north line of the Harris & Wilson and the south line of the Thomas Earl surveys, which reflected a position antagonistic to his present claim. This was wholly irrelevant, since all the pleadings and evidence in this suit made it an indisputable fact that the tract here in controversy lay wholly in either the Harris & Wilson or the Earl.

Considering now the two issues submitted and the jury's answers to them, as already said, we are unable to agree with appellant that neither should have been submitted, No. 1 because the location of the line in question had been bindingly established in the position claimed by him in prior suit No. 60798 between the same parties, and No. 2 because the evidence did not raise that issue; but we do hold that the evidence so preponderates against both answers that neither should be permitted to stand.

■■ It is not contended that the judgment in former suit No. 60798 was res adjudicata in the sense of conclusively terminating this entire controversy, for the reason that the tracts of land severally involved were not the same, but only that it fixed between the same parties as opposing litigants the southwest corner of the Earl—and as a necessary corollary its south line also—as being where appellant now contends they are, and therefore estopped the appellees from herein claiming and the jury from finding differently, as is the effect of the answer to special issue No. 1.

The argument for this estoppel proceeds upon the theory and essays to demonstrate that the location of the west line of the Thomas Earl was not the only issue in such former suit, because its field notes could not be applied to the ground so as to locate its west line independently of all its others, but its lines were so interdependent that no one could be located without at the same time locating them all; hence the location of the survey as a whole was necessarily involved. That such an estoppel may arise is well

settled. Old River Rice Irr. Co. v. Stubbs (Tex. Civ. App.) 168 S. W. 28, 29; State v. Ortiz, 99 Tex. 475, 90 S. W. 1084, 1085; Edinburg Irr. Co. v. Ledbetter (Tex. Civ. App.) 247 S. W. 335, 338, 34 Corpus Juris, 743; Board, etc., v. People, 189 Ill. 439, 59 N. E. 977, 979. But to the conclusiveness of its establishment here, we cannot assent; rather does the evidence impress us as tending to show the Earl to be a prairie survey, projected west from Green's bayou, with none of its corners or lines (other than the east one by the bayou), as called for in its original field notes, marked by any natural or artificial object, and with its north and south lines in consequence locatable only by general reputation, since neither the northeast nor southwest corners on, nor the position of the east line along, the bayou are so fixed.

We are convinced, too, that the only thing necessary of determination in suit No. 60798 was the latitudinal location of the west line of the Earl, and that the claimed fixing of its southwest corner also could not have been other than a mere incidental result of what was thus indispensable; this for the reason that the Oates heirs in that cause, among whom were the appellees here, in answer to Maxcy's suit against them for title to the J. W. Maxcy 37.2-acre survey patented to him July 5, 1912, which he never claimed came down any further south than he herein claims the north line of the Harris & Wilson to lie, simply asserted that their land, the Thomas Earl labor, went far enough west from Green's bayou to include what Maxcy thus sued for—nothing more. That was the sole issue joined and resolved by the jury; hence the finding upon it adversely to the Oates heirs merely determined that their line on the west went no further in that direction than Maxcy's eastern one, despite the court's recitation in the description of the 37.2 acres so awarded to Maxcy to the effect that the southwest corner of the Earl coincided with the southeast corner of the Maxcy.

■ So that, in the legal sense, that action had to do with neither the title to any of the land here in controversy, nor with the true location on the ground of the south line of the Earl labor; consequently its settlement by judgment worked no estoppel against the litigation of those matters in this proceeding, because "it is also well settled that, when the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue and points controverted, upon the determination of which the finding or verdict was rendered." Board of Directors v. People, 189 Ill. 439, 59 N. E. 977, 979; 34 Corpus Juris, p. 743(2); Edinburg Irr. Co. v. Ledbetter (Tex. Civ. App.) 247 S. W. 335, 338(2).

■ The sufficiency of the evidence to support this jury's finding under issue No. 1, however, presents a different question. The only testimony we find meeting the requirements of evidence tending toward upholding it was that of appellee A. M. Norsworthy, in purport that, from 1907 up until 1916, it was the general reputation in the community that the line between the Harris & Wilson and Thomas Earl surveys was where the old wire fence is situated. The countervailing weight of the evidence to the contrary seems to us well-nigh conclusive—it was at least so great as to require the setting aside of the verdict.

Appellant testified as a surveyor that the Harris & Wilson north line coincides with the south line of the Maxcy 37.2-acre patented survey, constituting a prolongation of it east to Green's bayou. In 1922 following the judgment in the cause No. 60798, the Oates heirs executed a partition deed affecting the Thomas Earl labor, in which they recited that its southwest corner coincided with the southeast corner of this Maxcy survey. All the surveyors who testified, including the county surveyor of Harris county, who was the appellees' witness, having also made for them the survey of the Earl on which they made the partition just referred to, said as the result of actual surveys by them that the old wire fence—thus determined by the jury to mark the Harris & Wilson north line—was 145 varas south of the south line of the Thomas Earl. The original field notes of the Harris & Wilson league called for its north line and the south line of the Earl to coincide, and that they did coincide is conclusively shown from all the facts and circumstances.

Moreover, there is a question as to whether the testimony of Mr. Norsworthy on this feature intrinsically measured up to the requirement that what is reflected as the community's conclusion about the matter had been founded on personal knowledge by the persons he heard discuss it. Maddox v. Lumber Co. (Tex. Civ. App.) 188 S. W. 958, 966. It does not appear that these persons had such knowledge; in any event, it is too weak to prevail against the array of facts and circumstances tending toward the contrary conclusion.

■ Equally if not more unsatisfactory is the showing on which the finding under issue No. 2 was based; the most that can be gotten out of it is—based on this phase also largely upon the testimony of A. M. Norsworthy—that the land was under fence and cattle were pastured on it, from the fall of 1907 to the beginning of 1916, something over nine years; if the testimony of the witness John Lee be added, that he built the fence in May of 1906, and that cattle were placed in there for the first time in the fall of that year, there is still less than ten years of occupancy made out.

The somewhat vague and scrappy testimony as to appropriation and occupancy of some portions of this land under a prior old rail fence, that seems only to have run in a

single string for about a quarter of a mile back west from Green's bayou, cannot support this finding because of an utter failure to identify just what land, if any, was in fact ever so enclosed and used, and, if so, for how long.

Further discussion is deemed unnecessary; for the errors pointed out the judgment has been reversed, and the cause remanded.

Reversed and remanded.