SUN OIL COMPANY et al., Appellants,

v.

RAILROAD COMMISSION of Texas et al., Appellees.

No. 11287.

Court of Civil Appeals of Texas.

Austin.

April 28, 1965.

Rehearing Denied May 26, 1965.

4.  2 Texas Law of Evidence (McCormick and Ray), Sec. 1682, p. 519.

A. T. Mullins, Austin, Dean J. Capp, Houston, E. M. Cage, Dallas, for appellants.

Waggoner, Carr, Atty. Gen., Hawthorne Phillips, First Asst. Atty. Gen., Stanton Stone, Executive Asst. Atty. Gen., J. S. Bracewell and Linward Shivers, Asst. Attys. Gen., Austin, for appellees.

PHILLIPS, Justice.

This is an appeal under Article 6049c, Section 8, Vernon's Civ.St., by Sun Oil Company and Pan American Petroleum Corporation from an order of the Railroad Commission assigning acreage for allowable purposes to the McCurdy State Well No. 4 in the 6000 feet Luby (J. Sand) Field, Nueces County, Texas. E. J. McCurdy, Jr., and W. L. McCurdy, now both deceased, were named as party defendants along with the Railroad Commission of Texas and its members.

The District Court sustained the Commission's order. From this judgment, Sun and Pan American have perfected their appeal in this Court.

We affirm the judgment of the trial court.

The order of the Commission pertaining to the field in question adopted field rules including an allowable formula based 100% on productive acreage; set what is known as the Maximum Efficient Rate of Production (MER) for this field; and assigned productive acreage to the several leases in the field for oil allowable purposes which, among assignments to leases not pertinent here, assigned 60 acres to the McCurdy-State of Texas Lease on Petronilla Creek. Appellants Sun and Pan American are complaining here only of the sixty acres assigned the McCurdy-State lease for proration purposes. Inasmuch as the proration formula for each well in the field is based 100% on acreage owned by the various lessees in the field, acreage assigned to the various leases for proration purposes is an important factor in establishing their per well allowables. Appellants maintain that that acreage in Petronilla Creek on the State lease held by the McCurdys between the admitted upstream and downstream limits of production is closer to 16 acres and that they, as adjoining leaseholders, are being illegally drained because of the inclusion of acreage in the abovementioned formula not subject to the McCurdy lease.

That because of such excess acreage having been assigned appellees, appellants have been and will be adversely affected and the oil they would otherwise be permitted to produce has been and will be confiscated.

Appellants are before this Court on six points of error.

The first three, which we shall discuss together, are as follows: there is no evidence to support the judgment of the trial court; the trial court's conclusion was so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly wrong and unjust; the court materially erred in holding that the action of the Railroad Commission herein complained of was valid, as such action was not reasonably supported by substantial evidence.

We overrule these points.

The point in controversy here is the number of surface acres in the McCurdy-State lease. Appellees McCurdys and the Railroad Commission defend the action of the Commission on the theory that appellants Sun and Pan American have plead a boundary case over which the Commission has no jurisdiction. Magnolia Petroleum Co. v. Railroad Commission et al, 141 Tex. 96, 170 S.W.2d 189. That if appellants are disputing the boundaries to appellees' lease, their remedy would be a suit in trespass to try title filed in the District Court of Nueces County, which according to the record in this case, has in fact been filed by the appellants herein against these same appellees over the acreage in question here.

Appellants, on the other hand, do not assert that the Railroad Commission has any authority to settle boundary disputes, however, they maintain that due to the evidence in the record of this case as adduced in the District Court, they established the fact, beyond any reasonable doubt and as a matter of law, that it is impossible for appellees' lease to contain 60 acres and that for this reason the Commission's order

should be considered void. Appellants maintain further that they are not asking this Court to find that their assertion that the lease contains only 16 acres, at most, is correct. They ask us to find that the Commission's finding that the McCurdy lease contains 60 productive acres is incorrect as a matter of law; consequently, the Court is not being asked to adjudicate boundaries and does not have a boundary suit before it.

In this respect, appellants introduced into evidence in the trial court a survey, authenticated by the testimony of the surveyor, to the effect that the width of Petronilla Creek between gradient boundary lines encloses less than 16 acres; that the width of navigable streams in Texas is determined by the application and location of the gradient boundary, citing Motl v. Boyd, 116 Tex. 82, 286 S.W. 458, State v. Heard, Tex. Civ.App., 199 S.W.2d 191, aff'd, 146 Tex. 139, 204 S.W.2d 344, among other cases. That the gradient boundary location is at some median point on and along the bank of a stream (never upland from the top of the bank), so that the width between gradient boundary lines in any segment of the stream is not greater than the width between the bank tops in such segment, see Motl v. Boyd and State v. Heard, above. That the width of Petronilla Creek involved here between gradient boundary lines encloses less than 16 acres. That we have here a situation where, as a matter of law, a line run upland from the top of the banks could not be a legitimate boundary line of Petronilla Creek. Appellants also introduced photographs of the creek into evidence which they contend show the tops of the banks.

Appellees, on the other hand, maintain that the basic question to be decided by this Court is whether the Commission can assign productive acreage to an operator who can show that he has a good faith claim to the land to be assigned for proration purposes. That this is the only question involved and that if boundaries and titles

thereto are in dispute, appellants have chosen the wrong forum.

■ We agree with the appellees on this point. In Magnolia Petroleum Company v. Railroad Commission, cited above, the court stated the law in this regard as follows:

"The function of the Railroad Commission in this connection is to administer the conservation laws. When it grants a permit to drill a well it does not undertake to adjudicate questions of title or rights of possession. These questions must be settled in the courts. When the permit is granted, the permittee may still have no such title as will authorize him to drill on the land. * * * It grants no affirmative rights to the permittee to occupy the property, and therefore would not cloud his adversary's title. It merely removes the conservation laws and regulations as a bar to drilling the well, and leaves the permittee to his rights at common law. Where there is a dispute as to those rights, it must be settled in court. The permit may thus be perfectly valid, so far as the conservation laws are concerned, and yet the permittee's right to drill under it may depend upon his establishing title in a suit at law.

"* * * If the applicant makes a reasonably satisfactory showing of a good-faith claim of ownership in the property, the mere fact that another in good faith disputes his title is not alone sufficient to defeat his right to the permit; neither is it ground for suspending the permit or abating the statutory appeal pending settlement of the title controversy." (Emphasis added)

With respect to appellees' good faith claim to title, the evidence presented in the trial court reflected that as early as January, 1940, the appellees McCurdys had asserted title to the river bed lease and the land in question herein by filing as a matter of public record with the Railroad Commission a survey prepared by a licensed land surveyor platting the acreage in controversy here. This plat was accepted by the Commission and became a part of their official records. This surveyor's plat was filed with the Commission pursuant to a Commission order in 1937 requiring a plat of the McCurdy lease on Petronilla Creek in the Luby Field.

In addition, appellees introduced into evidence an application to drill a well accompanied by an application for a Rule 37 permit, both filed in 1939, for permission to drill a well on the acreage in question. These applications indicated that the well would be drilled at least 230 feet from the nearest property line and attached a copy of a plat delineating the lease involved with an affidavit attached thereto by the surveyor swearing to its authenticity; another application to drill a well accompanied by an application for a Rule 37 permit was filed in 1939 for another well to be drilled on the property in question showing the nearest lease line to be 160 feet away and attached thereto a copy of a plat similar to that described above; two other Rule 37 applications were filed in 1957 and in 1963 containing information similar to that described in the former permit applications.

With respect to distances to nearest lease lines set out in the abovementioned applications, appellees' engineering witness testified that where the nearest distance to a lease line is 200 feet, the minimum distance of the lease would be at least 400 feet which would be an approximate width of two acres. This testimony was with reference to the acreage in question as shown by the original McCurdy survey.

Appellees' engineering witness, having been given a copy of the abovementioned survey prepared for the McCurdys in 1939, said survey having been a part of the Commission's official records for more than twenty years, planimetered the plat and found that it contained 173 acres; that due to his investigation as a petroleum

engineer there were in excess of 60 productive acres within the McCurdy tract. To planimeter is to run a mechanical device along the survey lines of a plat while the devise automatically computes the acreage involved from the distance it travels along the perimeters.

Appellees also introduced a letter from the Commission's files that had been sent the McCurdys by the Land Commissioner of Texas. This letter was dated April 19, 1963 and stated that the Land Office had received a corrected survey from the McCurdys pertaining to the lease in question; that the field notes therein had been examined and approved for 173.13 acres.

The appellants here were charged with the burden of demonstrating to the satisfaction of the trial court that the McCurdys had not asserted a good faith claim to the acreage in question. We hold that they have not discharged this burden.

Appellants apparently take the position that they produced a survey, introduced it into evidence by the surveyor who did the work; that the survey demonstrated that appellees' lease could not contain more than 16 acres. They then argue that the evidence introduced at the trial court by appellees was inadmissible leaving their survey uncontroverted.

They maintain that the 1939 survey introduced by appellees was not admissible as it was not introduced by the surveyor who prepared it. That the appellees' engineer witness was not a surveyor and was not competent to testify with respect to this survey. In this connection appellants cite Maxcy v. Norsworthy, Tex.Civ.App., 19 S.W.2d 926, and Sanders v. Worthington, Tex.Civ.App., 349 S.W.2d 115. Maxcy is cited for the proposition that a map or diagram cannot be received as evidence per se independently of the testimony of the witness verifying or accompanying it. Sanders is cited for the statement that it is not permissible for subsequently made maps and field notes, even though made

under the authority of the General Land Office, to change or alter surveys in such a way as to include land not included in the original survey. Both of these cases involved boundary disputes and the law stated therein is applicable to the admissibility of evidence in a boundary dispute.

We do not have a boundary dispute here. We hold that appellees' evidence was admissible to show that the Commission had substantial evidence before it upon which it could rely on appellees' good faith assertion of title to the acreage involved for the purpose of applying rules thereto in furtherance of the conservation of the underlying hydrocarbons. This was the Commission's sole function here.

Appellees' fourth point of error is that the Commission's order herein is in fact determining boundaries; that since the Commission has adopted 100% productive acreage as the basis for the formula of distributing the allowable for each well, their finding that the McCurdys have 60 productive acres will give the McCurdys a material advantage in production over adjacent lease holder appellants. We overrule this point and repeat that the findings of the Commission with respect to the area involved are made for the purpose of arriving at a formula that will produce the underlying hydrocarbons in the most efficient manner considered in the light of the conservation laws. Any findings involving acreage assignable to the various leaseholds involved are made subject to the legal titles thereto. See the Magnolia case cited above.

We are not concerned here with the preponderance of the evidence or the best evidence. We are concerned only with viewing a Commission order, presumptively valid, so as to ascertain whether there is substantial evidence of a good faith claim on the part of the appellees herein to the acreage in controversy. Any other construction here would place the Commis-

sion in the position of having to determine the gradient boundary of a stream bank which is often a difficult task for a surveyor. The Commission must proceed with its duty of assigning allowables to the various wells upon the presentation of evidence by the interested parties, in good faith, and orders based thereon will not be disturbed by the courts where the differences of opinion are reasonable. The Commission's reliance on plats and surveys of the area before us that had been in their files for over twenty-four years, that had formed the basis of hearings on other permits and orders concerning the area was reasonable even though this Court, sitting as the Commission, might have ruled otherwise.

Appellants' point of error number five is that the trial court in admitting into evidence certain photographs, maps, plats, field notes and the conclusions drawn therefrom and the testimony based thereupon, from the Railroad Commission hearing record in this matter, without further authentication by the witness or witnesses who prepared them and simply on the Railroad Commission Secretary's certificate stating such documents were copies from the Commission's files, and such improperly admitted evidence and testimony cannot constitute reasonable support of the Commission's action herein.

We overrule this point.

Art. 3731a, Section 1, V.C.S., is as follows:

"Any written instrument, certificate, record, part of record, return, report, or part of report, made by an officer of this State or of any governmental subdivision thereof, or by his deputy, or person or employee under his supervision, in the performance of the functions of his office and employment, shall be, so far as relevant, admitted in the courts of this State as evidence of the matter stated therein, subject to the provisions in Section 3. As

amended Acts 1961, 57th Leg., p. 685, ch. 321, § 1."

Art. 3737c, V.C.S., is as follows:

"Certified copies of well logs, and records, plugging records, oil and gas production records or reports and all other instruments pertaining to the drilling, completion, operation, abandonment, or plugging of oil and/or gas wells, in this State, required by Statute or by rules heretofore or hereafter adopted by the Railroad Commission of Texas, to be filed with the Railroad Commission of Texas, and which have been heretofore or may be hereafter filed with said Railroad Commission of Texas, shall be admissible in evidence. Such certificate to any such certified copies may be made by any member of the Railroad Commission of Texas, or by the Secretary of said Commission. [Acts 1937, 45th Leg., p. 1118, ch. 449, § 1.]"

■ Appellees' record evidence came within the meaning of these two statutes and the trial court did not err in permitting this record evidence to be used. This was the evidence that was before the Railroad Commission and the trial court and was sufficient for both, as they both found, to support a good faith claim to title by the appellees. Appellants cite Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022 and Hawkins v. Texas Co., 146 Tex. 511, 209 S.W.2d 338 to the effect that evidence or exhibits heard by the Commission is not per se admissible in the District Court trial.

Conversely, these cases do not hold such evidence inadmissible but state that its admissibility depends upon its own merits under the general rules of evidence and without regard to whether it had theretofore been introduced before the agency. We hold that these records were competent evidence to support appellees' claim to title for the purpose of obtaining well allowables from the Commission.

Appellants' point of error number six is that of the court in admitting in evidence a set of field notes not shown to be in existence upon the date of the Railroad Commission's action herein, and in permitting testimony as to action taken with reference to filing such field notes in the Land Office and in the County Clerk's office, Neuces County, after the date of the Commission's action herein, and such improperly admitted evidence cannot constitute reasonable support of the Commission's action herein.

This point of error has reference to the field notes filed with the Land Commission and referred to by the letter of the Land Commissioner discussed above. Also under this point of error is a proration plat which the McCurdys filed May 6, 1963 claiming for their unit the 60 acres awarded them in the Commission's action of March 13, 1963.

We overrule this point.

■ In trying the issue of the validity of the Commission's order appellees are not restricted to "evidence" available when the Commission held the hearing.

■ A proration order of the Commission is an order of legislative nature, an order governing future conduct. Sun Oil Co. v. Railroad Commission, Tex.Civ. App., 68 S.W.2d 609, dism. as moot, Bennett v. Sun Oil Co., 126 Tex. 269, 84 S.W.2d 693. Consequently, when such an order is tested in court, it may be tested by reference to evidence that becomes available after the Commission acted. Such evidence does not prove facts different from those existing when the Commission acted. It merely proves the facts then existing by reference to evidence not available until a later date. The only limitation is the evidence must have existed at the time the Commission acted. Lone Star Gas Co. v. State, 137 Tex. 279, 313–314, 153 S.W.2d 681, 699–700; United Gas Public Service Co. v. Texas, 303 U.S. 123, 145–146, 58 S.Ct. 483, 82 L.Ed. 702; Lone Star Gas Co. v. Texas,

304 U.S. 224, 228, 58 S.Ct. 883, 82 L.Ed. 1304.

Particularly appropriate is the Supreme Court's decision in Pickens v. Railroad Commission, Supreme Court, 387 S.W.2d 35 delivered February 10, 1965. Here appellants objected to maps and exhibits prepared after the entry of the Commission's order. The Court stated:

"The trial court admitted the first of these exhibits with the following ruling:

" 'I will overrule the objection [of counsel for Pickens et al.] with the following qualification: That I will only consider it if it shows anything that was in existence, or tends to show anything that was in existence, at the time of the order of the Commission, whether it was discovered later, or platted later, studied later, or the results showed later. * * *

" 'Now that may be a little complicated, but I felt that I must qualify it to that extent. The limitation in so far as information obtained, experiments and results of experiments made since the Railroad Commission order, is admissible in so far as it might show, or tend to show, what was actually in existence, or conditions in existence at the time of the Railroad Commission order, whether they were then known or not.'

"There was substantially this same ruling on the admissibility of other evidence of the same nature.

"The trial court's ruling was correct. Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681 at 700 (1941). Many of the basic 'conditions' which were geologically in existence in the oil field at the time the Commission acted may have existed for a million years; and the fact that they were discovered, or evidence of the condition was adduced, after the Commission's order would not render the evi-

dence inadmissible. It is, of course, possible for conditions to change within the field; and it would not be entirely fair to the Commission to judge its orders by conditions which have changed since its order. Here, however, the trial court admitted the geological evidence which showed, or which tended to show, what the conditions were as of the time of the order, and what the Commission might reasonably have anticipated to occur as a result of those conditions."

It is quite clear from appellants' brief that the objections raised to certified documents offered by appellees all go to the admissibility of such documents to prove title or boundary. As stated previously, appellees' title was not at issue but rather the question was whether appellees asserted good faith title or claim.

The judgment of the trial court is affirmed.